Frank W. **BRACEWELL** and Clyde R. Cox, Appellants,

v.

James W. **FAIR**, et al., Appellees.

No. 01–82–0095–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 15, 1982.

situations in which a juvenile is served by a sheriff or constable under Tex.R.Civ.P. 15.

Royal D. Adams, Susan Olsson Kahn, Adams & Hunter, San Antonio, for Clyde R. Cox.

David C. Redford, Hughes, Watters, Askanase & Redford, Houston, for Frank W. Bracewell.

Jeffrey Wolff, Tom A. Cunningham, Fulbright & Jaworski, Houston, for appellees.

Before DOYLE, DUGGAN and DYESS, JJ.

### OPINION

DYESS, Justice.

This is a venue suit. The appellees, lessees under two oil and gas leases brought this suit pursuant to the Texas Declaratory Judgment Act, seeking a declaratory judgment determining their obligation to drill under such leases executed by the appellants. The appellees also requested that the leases be declared to be held by production and to be in full force and effect as to the entire acreage involved. The appellants filed a plea of privilege by which they urged the transfer of the case to Frio County under Tex.Rev.Civ.Stat.Ann. art. 1995, subd. 14, *Lands*. In reply, the appellees filed controverting affidavits thereby asserting that venue was properly maintainable in Harris County for three reasons: 1) subdivision 4, "Defendants in different Counties," was applicable; 2) subdivision 29a "Two or more defendants," was applicable; and 3) subdivision 14, "Lands" was inapplicable.

The plea of privilege was overruled by the trial court. On this appeal, the parties address their arguments solely to the question of whether subdivision 14 is applicable to the suit.

At the very outset we recognize that the Declaratory Judgment Act does not fix venue, and further, that actions for declaratory relief are subject to the general venue rule and its thirty-one exceptions, *Community Inns Franchise, Inc. v. Plummer,* 379 S.W.2d 670 (Tex.Civ.App.—Amarillo 1974, no writ).

Prefatory to a decision on a plea of privilege based on subdivision 14, two venue facts must be established: 1) the nature of the plaintiff's claim and 2) the location of the land. Tex.Rev.Civ.Stat.Ann. art. 1995, subdivision 14; *Dorfman Development Company v. American Commonwealth Development Co.,* 523 S.W.2d 268, 270 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ).

In the case at bar, the parties stipulated that the land in question is in Frio County, but they maintain opposing positions, forcefully urged, with regard to the nature of the suit. On the one hand, the appellants contend that the main thrust or essence of the appellees' suit is a request for the court to determine that their interest in the 3,791.24 acres of land in question has not been terminated and/or reduced. On the other hand, the appellees assert that the ultimate and principal purpose of their suit is merely a determination of the meaning of an oil, gas and mineral lease provision.

A difference in the interpretation of the following provision gave rise to the suit:

That Lessee or his assigns shall within six (6) months from approval of title by its attorney, proceed to drill a well upon the leased premises and upon completion as a producing oil or gas well or abandonment of said well as a dry hole shall proceed to drill a subsequent well within 120 days thereof, if the preceeding well had a depth of 5,000 feet or less or within six (6) months thereafter if the preceeding well had a depth of more than 5,000 feet, provided that the only penalty for failure to comply herewith shall be the obligation of the Lessee to release said lease, except for 80 acres around each drilled oil well, producing or non-producing and 640 acres around each gas well or such larger acreage as may be required by the Texas Railroad Commission or other regulatory authority. However, Lessee shall have the right of ingress and egress over and across the entire leased premises so long as any acreage is held thereon.

It is undisputed that the appellees had completed 10 wells when they were notified by letter from the appellants that the latter were asserting the ". . . novel position that the lease provisions quoted above required that a new well be drilled every six (6) months under each lease, during the life of each lease."

While there is no evidence in the record indicating whether the appellants took any action to force their interpretation of the leases upon the appellees before the suit was instituted, the following in language appears in the appellees' petition and prayer:

From the foregoing, it is readily apparent that James W. Fair caused wells to be drilled on the acreage covered by the Lease of January 26, 1976 and the Lease of February 26, 1976 within the six (6) month period of time prescribed by such leases and that upon completion of those wells as producing oil wells, James W. Fair caused additional wells to be completed within the time required thereafter. Accordingly, James W. Fair has fully and completely complied with the provisions of such leases quoted above and has further complied with all other obligations which arise under such leases. Since all of the foregoing wells have always been and currently are productive of oil, the Lease of January 26, 1976 and of February 26, 1976 are held by production and remain in full force and effect. Heretofore, however, James W. Fair has received written communications from individuals apparently representing Frank W. Bracewell and Clyde R. Cox in which is asserted the novel position that the lease provisions quoted above required that a new well be drilled every six (6) months under each lease, during the life of each lease.

The plaintiffs named herein other than James W. Fair are, like defendants, owners of mineral interests in the land made the subject of the leases described above. Plaintiffs assert in good faith that James W. Fair has fully complied with the leases in all of their particulars, including the provisions quoted above. Because of the adverse position being taken by Frank W. Bracewell and Clyde R. Cox, however, a genuine controversy has arisen and is ripe for adjudication pursuant to Article 2524–1 of the REVISED CIVIL STATUTES OF TEXAS.

WHEREAS, PREMISES CONSIDERED, plaintiffs respectfully pray that defendants be cited to appear and answer herein and that upon trial hereof plaintiffs have a declaratory judgment determining and declaring that the provisions of the Lease of January 26, 1976 and the Lease of February 26, 1976 quoted above, have been fully complied with by the Lessee and that both of such leases are held by production and are in full force and effect. Plaintiffs further pray for the recovery of costs and for such other and further relief to which they may show themselves justly entitled.

The bedrock question is whether the dispute over this property is the type of controversy contemplated under subdivision 14 as a suit involving land. The answer is found by looking at 1) the main thrust of the plaintiffs' suit and 2) the relief prayed

for therein. *Renwar Oil Corporation v. E. L. Lancaster,* 276 S.W.2d 774 (Tex.1955).

It is the ultimate or dominant purpose of a suit that determines whether a particular suit falls under subdivision 14, and not how the cause of action is described by the parties. *Texaco v. Gideon,* 366 S.W.2d 628 (Tex.Civ.App.—Houston 1963, no writ). Once it is demonstrated that the court's judgment would have some effect on an interest in realty, then the venue of the suit is properly fixed under subdivision 14. *Twin Montana, Inc. v. Brazos Fuel Company, Inc.,* 613 S.W.2d 65 (Tex.Civ.App. —Fort Worth 1981, no writ).

There is no doubt that the appellees are claiming a right to possess a mineral leasehold to the exclusion of the appellants. By the allegations in their petition and by the relief sought in their prayer, they contend that they are entitled to the full acreage amount of 3,791.24 acres by having complied with the lease provisions. They also assert in their petition that the defendants (appellants here) claim right to such acreage (except for 80 acres around each gas well or such larger acreage as may be required by the Texas Railroad Commission or other regulatory authority because of the failure of the appellees to comply with the drilling provisions of the lease in question). Can it seriously be questioned then, that the ultimate purpose of this suit is to determine who has the right under the lease agreements to possess the acreage in excess of 80 acres around each drilled oil well, producing or non-producing, and 640 acres around each gas well, etc.?

A lease for a term of years is a grant of an estate in land for a limited term with conditions attached. *M. S. Garrison v. Morrow,* 300 S.W.2d 175 (Tex.Civ.App.— Beaumont 1957, writ dism'd). In leases dealing with mineral rights, such as oil, gas and mineral leases, the lessees have a determinable fee interest in the oil, gas and minerals in place, and, thus, have an interest in land. *Tennant v. Dunn,* 130 Tex. 285, 110 S.W.2d 53 (1937). Where the Court's construction of the lease would affect an individual's interest in even a temporary estate, it has been held that the suit is one involving an interest in land. *W. B. Johnson Drilling Company v. Lacy,* 336 S.W.2d 230 (Tex.Civ.App.—Eastland 1969, no writ). In fact, Texas courts have held consistently that such disputes over mineral leases come within the purview of subdivision 14, because a resolution of the dispute would affect possessory rights in land.

Perhaps the best illustration of the now well settled application of subdivision 14 to disputes over mineral lease provisions is found in *Atlantic Richfield Co. v. Trull,* 559 S.W.2d 676 (Tex.Civ.App.—Corpus Christi 1977, writ dism'd.). In *Trull* the plaintiffs, as lessors, had executed oil and gas leases for property located in Matagorda County that included the following clause:

> It is agreed ... that lessee shall reasonably develop all sands encountered on the leased premises capable of producing oil or gas in paying quantities.... Failure of lessee to reasonably develop the leased premises as above provided shall cause a forfeiture and termination of this lease as to all acreage covered hereby SAVE AND EXCEPT....

The plaintiffs brought a declaratory judgment suit, alleging that a portion of the leasehold estate had been forfeited because of a lack of reasonable development of the Frio Sands. The Corpus Christi Court of Civil Appeals affirmed the action of the trial court in fixing venue of the suit in Matagorda County wherein the land was located. In so doing, the court held that the plaintiffs' cause of action (to have part of the leases forfeited due to lack of reasonable development) was a suit to recover land, and therefore the proper venue was the county wherein the lease held was situated.

To the same effect see *Roach v. Chevron U.S.A., Inc.,* 574 S.W. 200 (Tex.Civ.App.— San Antonio 1978, no writ), wherein there was a conflict between lease holders as to the temporary use of the surface. In holding that the provisions of Subdivision 14 controlled, the court stated:

Appellants admit that the plaintiff's allegations present a case of conflict between leaseholders as to the temporary use of the surface. Therefore, subdivision 14 controls because such a conflict affects rights appurtenant to the ownership of interests in land. The primary relief requested herein is a determination and declaration of who has superior rights to use the surface of this land. *Id.* at 203.

Looking to the appellees' prayer for relief below, we find that it too evidences that the nature of the cause of action is for the recovery of lands. In their prayer for relief, the appellees point up their desire to have an adjudication on the right to hold and possess the oil and gas leases in question as follows:

..., plaintiffs respectfully pray that defendants be cited to appear and answer herein and that upon trial hereof plaintiffs have a declaratory judgment determining and declaring that the provision of the Lease of January 26, 1976 and the Lease of February 26, 1976 quoted above, *have been fully complied with by the lessee and that both of such leases are held by production and are in full force and effect....* (Emphasis added).

■ It is apparent that the appellees have asked the trial court to adjudicate the right of possession over leasehold estates. It is in this posture that the appellees sought the declaratory judgment in this case. We hold that a declaratory judgment determining the appellees' present interest in the Frio County oil and gas leaseholds in controversy, or the appellees' right to future production therefrom, is a suit involving land. *Elder v. Miller,* 116 S.W.2d 1171 (Tex.Civ.App.—Waco 1938, no writ); *W. B. Johnson Drilling Co. v. Lacy,* supra at 234.

■ Where a suit involves a declaration of interpretation of a contract covering designated oil and gas leases, venue is properly in the county where the land is situated if the final result of the adjudication would be determination of the plaintiff or defendants' mineral interests in the land in question. *Texaco, Inc. v. Gideon,* supra at 631.

The Supreme Court of Texas in the case of *Renwar Oil Corp. v. Lancaster,* supra, drew the distinction between a suit seeking recovery under a contractual theory and a declaratory judgment seeking to have the right of possession of land determined in the following statement at 776:

While it is true that an oil and gas lease is a contract in the sense that it is a conveyance of realty upon terms and conditions which may be contractual in nature, the relief plaintiffs seek is not personal as distinguished from real in that as between the parties they seek an adjudication that the Davis Survey is not in conflict with another grant, and therein lies the heart of the controversy over the precise amount of the royalty due them.

We reverse the judgment of the trial court and remand this cause for transfer to Frio County.