Mary Olivia Handy PARKER, et
al., Appellants,

v.

PETRO–LEWIS CORPORATION,
Appellee.

No. 04–82–00247–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 28, 1983.

Peter H. Carroll, III, Robert Lee Bobbitt,
Brite, Drought, Bobbitt & Halter, San An-
tonio, for appellants.

Ewing Werlein, Jr., Vinson & Elkins,
Houston, for appellee.

Before ESQUIVEL, REEVES and TI-
JERINA, JJ.

## OPINION

REEVES, Justice.

This is a venue case. Appellants, Mary
Olivia Handy Parker, et al., sued appellee,
Petro-Lewis Corporation, in McMullen
County. Appellee filed a plea of privilege
seeking to transfer the cause to Harris
County, the county of its residence. Appel-
lants controverted the plea, relying on sub-
divisions 14 and 27 of article 1995 TEX.
REV.CIV.STAT.ANN. (Vernon 1964).[1] The
trial court sustained appellee's plea of privi-

---

1. 14. Lands.—Suits for the recovery of lands
or damages thereto, or to remove encum-
brances upon the title to land, or to quiet the
title to land, or to prevent or stay waste on
lands, must be brought in the county in which
the land, or a part thereof, may lie.

27. Foreign Corporations.—Foreign corpo-
rations, private or public, ... doing business

within this State, may be sued in any county
where the cause of action or a part thereof
accrued, or in any county where such company
may have an agency or representative, or in the
county in which the principal office of such
company may be situated....

lege and transferred the cause to Harris County, Texas.

On May 28, 1971, the Alamo National Bank of San Antonio, Trustee for the South Texas Syndicate, as lessor, entered into an oil and gas lease with Newman Brothers Drilling Company (Newman), as lessee, covering land in McMullen County.

On March 20, 1972, Newman assigned to Harry J. Parker, appellants' predecessor in title, three-fourths (¾) of the leasehold interest. The assignment was subject to an agreement to reassign to Newman an undivided one-fourth (¼) of the three-fourths (¾) interest in the McMullen County premises upon the recoupment by Parker of certain costs and expenses incurred in the drilling and completion of a producing well or wells upon the assigned premises.

On August 13, 1975, Harry J. Parker, as assignor, assigned the lease to Tesoro Petroleum Company, as assignee. The assignment provided that all obligations incurred by Parker in the assignment and a farm-out letter agreement with Newman would be assumed and performed by assignee, (Tesoro) including the obligation to assign Newman an undivided one-fourth (¼) of three-fourths (¾) interest in the premises upon recoupment of costs and expenses of the well or wells drilled and completed as producing wells upon the premises.

Paragraph (b) of the assignment reserved unto Parker an overriding royalty of 3–⅓% of all oil and gas produced from each well until Parker had recovered 100% of the costs enumerated in Paragraph B. After recoupment of such costs and in lieu thereof, the assignment provided as follows:

(c) Assignors shall become and be entitled to a net profits interest in production from each such well, which is hereby reserved to assignors, their heirs, successors and assigns, equal to 25% of the net proceeds receivable by assignee for and on account of its interest in production from each such well, after deducting from the gross sales of production all land owner royalty, overriding royalties, production taxes, severance and ad valorem taxes, and any direct operating expenses and administrative overhead charges which may be made in accordance with and subject to the terms of a mutually satisfactory operating agreement; in which net profits interest shall be paid and delivered to assignors. . . .

Appellee, Petro-Lewis Corporation, is the successor to the rights and obligations of Tesoro.

In July 1981, appellants instituted this suit in McMullen County. The pleadings allege the appellants are entitled to 25% of the net profits of the lease, less certain costs, based on 100% of appellee's working interest in the lease, but that, contrary to the assignment, appellee has reduced their net interest in the lease to 18.75% (25% of 75%) by deducting the one-fourth (¼) of three-fourths (¾) interest due Newman before calculating appellants' 25% net profits. Appellants plead that their title be quieted to such net profits interest. They further seek recovery for payment of their net interest based on 100% of the working interest in the lease.

■ The necessary venue facts to be established under subdivision 14 are (1) the suit is one for the recovery of land or damages thereto, and (2) the land is situated in the county where the suit is filed. *Piazza v. Phillips,* 153 Tex. 115, 264 S.W.2d 428 (1954). It is uncontroverted that the leased premises is situated in McMullen County. Our query, therefore, is whether appellants' suit is one for the recovery of land or damages thereto. This is determined by the principle right asserted in plaintiff's petition and the relief sought for the alleged breach thereof. *Anglo Exploration Corp. v. Grayshon,* 577 S.W.2d 742, 744 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *Peoples National Bank of Tyler v. Cranek,* 557 S.W.2d 330 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ dism'd).

■ It is well established in Texas that a royalty and an overriding royalty in minerals are considered "land" for the purpose of fixing venue in suits for recovery of such interest or damages thereto. *Anglo Exploration Corp. v. Grayshon, supra* at 744. A

net profits interest is also an interest in land. *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.,* 651 S.W.2d 284, 292 (Tex.App.—Austin 1982, no writ).

Appellants contend that in reducing the revenue derived from their net profit interest in the lease, appellees disparaged their title. Appellee alleges the lawsuit is one to construe the lease contract and for damages since there is no dispute concerning the ownership or entitlement to the 25% net profit interest owned by appellants.

In support of appellants' contention that subdivision 14 is applicable since the net result of this law suit will determine the proportionate interest of the oil and gas estate in this land, they cite *Renwar Oil Corp. v. Lancaster,* 154 Tex. 311, 276 S.W.2d 774 (1955). In that suit the plaintiffs (hereinafter called Lancasters) sued Renwar Oil Corporation (hereinafter called Renwar) in Nueces County, Texas. Renwar filed a plea of privilege. The Lancasters asserted venue under subdivision 14 and alleged ownership in one-eighth (⅛) of the minerals under the north ½ of the Davis Survey in Nueces County, Texas, and further pled that they executed an oil and gas lease, transferred to Renwar, in which they obtained a one-sixty-fourth (¹⁄₆₄) oil and gas royalty. Subsequently, Renwar drilled three producing wells on the north one-half (½) of the Davis Survey but refused to pay the Lancasters a full one-sixty-fourth (¹⁄₆₄) of the oil run from the three wells. The basis for the reduction of the payment to the Lancasters was the unitization of the Davis Survey tract with other adjacent tracts owned by the State of Texas pursuant to paragraph 5 of the lease, which paragraph, according to the allegations of the Lancasters', was void and unenforceable under the statute of frauds. The Lancasters further asserted that Renwar had secured working agreements on oil and gas leases on State land which Renwar alleged to be in conflict with the Davis' land which resulted in a diminution of the Lancasters' royalties when, in reality, the two tracts were not in conflict; that the leases did not comply with various statutes and were void. The Lancasters' contended that they were entitled to receive from Renwar their full royalty of one-sixty-fourth (¹⁄₆₄) of the value of the minerals without diminution or reduction by the one-eighth (⅛) royalty promised to the State.

Our Supreme Court held in *Renwar* that the suit was essentially one for the recovery of land and to quiet title within subdivision 14. The Court stated,

> While it is true that an oil and gas lease is a contract in the sense that it is a conveyance of realty upon terms and conditions which may be contractual in nature, the relief plaintiffs seek is not personal as distinguished from real in that as between the parties they seek an adjudication that the Davis Survey is not in conflict with another grant, and therein lies the heart of the controversy over the precise amount of the royalty due them.

*Id.* 276 S.W.2d at 776.

Another case regarding the construction of oil and gas leases is *Texaco, Inc. v. Gideon,* 366 S.W.2d 628 (Tex.Civ.App.—Austin 1963, no writ). The lawsuit sought to determine the consequences of a ratification agreement upon the royalty interest owned by appellee. Appellee endeavored to establish a royalty interest in two sections of land rather than an interest limited to a smaller area. In response to the allegation that the suit was to construe or interpret the contract the court stated, "This may be correct, but the final and ultimate result will be to determine appellee's mineral proportions on either the ¼ Sections or extended to the ½ Sections." *Id.* at 632.

The court in *Bracewell v. Fair,* 638 S.W.2d 612 (Tex.App.—Houston [1st Dist.] 1982, no writ), was faced with a similar problem, i.e., venue in Frio County under subdivision 14. In *Bracewell,* appellants contended the principal purpose of the lawsuit was for the court to determine whether their interest in 3,791.24 acres of land in Frio County had been terminated and/or reduced. Appellees contended that the principle purpose of the suit was a construction of a particular provision of the lease in question. The court of appeals reversed the trial court stating, "It is apparent that the

**908**

appellees have asked the trial court to adjudicate the right of possession over leasehold estates." *Id.* at 616.

Appellee, in support of his position that the lawsuit is one of construction of a contract which is not within the gambit of subdivision 14, cites *Amoco Production Co. v. Mayer,* 540 S.W.2d 353 (Tex.Civ.App.—Beaumont 1976, writ dism'd). In that case, Mayer, as lessor, entered into an oil and gas lease that contained the following clause:

> ... on gas, including casinghead gas or other gaseous substance, produced from said land and *sold or used off the premises* or in the manufacture of gasoline or other product therefrom, *the market value at the well* of one-eighth of the gas so sold or used, provided that on *gas sold at the wells the royalty shall be* one-eight of the *amount realized from such sale.* [Emphasis ours.]

*Id.* at 355.

Amoco, the owner of the lease, subsequent to its execution with Mayer, contracted to sell the gas to Lone Star at $.38 per million BTU, *with delivery at various points.* The market value of the gas increased. Mayer contended that the sale of the gas did not take place at the wells, and they were entitled to a royalty based on the market value of the gas instead of the price set by Amoco and Lone Star. The court found that this was a suit to construe a contract and that subdivision 14 did not apply. However, it appears to us that the clause in the oil and gas lease between Mayer and Amoco is without ambiguity, and that, in reality, the question was to determine whether the gas was sold off the premises or at the well. The determining factor was whether Amoco's contracting and delivering to Lone Star Gas with delivery at various points amounted to gas sold off the premises. We do not think that *Amoco* is dispositive of the question under consideration in this case. Nor do we accept *Shamrock Oil & Gas Corp. v. Price,* 364 S.W.2d 260 (Tex.Civ.App.—Amarillo 1963, no writ) as authority that this case does not fall under subdivision 14. The majority opinion in *Shamrock* expressly states that

they did not believe subdivision 14 was preserved on appeal but, in the event they were wrong, it had no application since the question concerned payment of the market value for the gas. The applicability of subdivision 14 was never fully developed nor discussed in this opinion, and is, at most, merely dictum.

The lawsuit in the case at bar, in final analysis, will determine whether appellants own, as a net profits interest, 25% of 100% of the oil and gas in this land or 18.75% (25% of 75%) of it.

 We are of the opinion that a suit to determine the quantum of a mineral interest in an oil and gas lease is a suit that comes within the parameters of subsection 14, and can be pursued in a county where the land is situated.

The judgment of the trial court is reversed and the cause is remanded for trial on its merit in the district court of McMullen County.