C.C. KILGORE et al., Appellant,

v.

BLACK STONE OIL COMPANY et al., Appellee.

No. 09–98–143 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 28, 1999.

Decided April 27, 2000.

Joe G. Roady, Mary–Ann A. Bellatti, Sheinfeld, Malley & Kay, P.C., Houston, Roger S. McCabe, Mehaffy & Weber, Beaumont, Bill Jones, Terrell L. Pace, Livingston, Dan Morales, Atty. Gen., Jorge Vega, First Asst. Atty. Gen., David A. Talbot, Jr., Deputy Atty. Gen., Karen W. Kornell, Mary A. Keeney, Asst. Attys. Gen., Austin, for appellants.

Jess Hall, Jr., Stacy Williams, Liddell, Sapp, Zivley, Hill & LaBoon, LLP, Houston, Gilbert Low, Orgain, Bell & Tucker, Beaumont, for appellees.

Before WALKER, C.J., STOVER and FARRIS,* JJ.

---

* The Honorable David Farris, sitting by assignment pursuant to Tex. Gov't Code Ann.

## OPINION

DAVID FARRIS, Justice (Assigned).

In this suit for conversion of oil and gas and title to minerals, the appellants raise four issues. Issue one complains of the trial court's grant of summary judgment applying *stare decisis* to a case this Court decided some eighty-three years ago in *W.T. Carter & Bro. v. Collins,* 192 S.W. 316 (Tex.Civ.App.—Beaumont 1916, writ ref'd). Based upon the doctrine of *stare decisis* as it is applied to cases involving the determination of boundary lines, we conclude the trial court did not err in granting the summary judgment in question. Because of this holding, the only other issue we need address is appellant's complaint regarding improper venue transfer. We find no need to address the issue regarding privileged documents, because our holding on the *stare decisis* issue extinguishes the need for consideration of any extraneous survey evidence on the alleged boundary dispute. We overrule appellants' complaint challenging the venue ruling because venue in Polk County was mandatory under Tex. Civ. Prac. & Rem.Code Ann. § 15.011 (Vernon Supp. 2000).

### *STARE DECISIS*

■ The issue that impends upon the others is whether, under the doctrine of *stare decisis,* this court's opinion in *Carter v. Collins* stands as a bar to appellants' claims as a matter of law. Central to this issue is an unresolved question about how Texas courts apply *stare decisis* to boundary line cases. *See Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex.1964); *see also* Gus M. Hodges, *Stare Decisis in Boundary Disputes: Let There Be Light,* 21 Tex. L.Rev. 241 (1943). There are two divergent notions about how *stare decisis* should be applied to Texas boundary line cases, the orthodox doctrine and an unorthodox approach. ˙ The orthodox doctrine

§ 74.003(b) (Vernon 1998).

of *stare decisis* determines only questions of law. *Id.* at 242. After a legal question has been squarely decided by the Supreme Court, its decision is precedent, binding it and courts of lower rank when the identical question is raised in a later suit between different parties. *See Swilley,* 374 S.W.2d at 875. In contrast to the orthodox doctrine of *stare decisis,* some courts of appeals have concluded that a fact issue determination—i.e., the fixing of boundary lines, headright surveys, or other fixed real property markers—may be binding precedent under the doctrine of *stare decisis. See Rice v. Armstrong,* 616 S.W.2d 415, 417 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.). Under this approach, the location of a boundary line will control the location of the same line in a later suit even though the first case turned upon an issue of fact or the legal questions of the later case are not those of the first case. *See Swilley,* 374 S.W.2d at 875.

This court has addressed this notion of *stare decisis* in three opinions. *See Atchley v. Superior Oil Co.,* 482 S.W.2d 883 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.); *Patterson v. Peel,* 149 S.W.2d 284 (Tex.Civ.App.-Beaumont 1941, writ ref'd); and *McDonald v. Humble Oil & Refining Co.,* 78 S.W.2d 1068 (Tex.Civ.App.—Beaumont 1935, writ dism'd). And we adhere to the unorthodox view. *See Atchley* 482 S.W.2d at 897–98.

Asserting that they own the mineral interests in the Escobeda League in Polk County, appellants sued appellees for converting oil and gas that they contend belonged to them and was produced from the Escobeda League. Essential to their recovery is appellants' contention that the Escobeda League conflicts with three surveys, the Colville, Thompson, and Wylle.[1] Appellees pleaded a defense under the doctrine of *stare decisis* and moved for summary judgment. Appellees contended the appellants were suing them for con-

verting oil and gas produced from lands located under the Colville, Thompson, and Wylle Surveys, that those surveys did not conflict with Escobeda, and that the absence of any conflict was forever determined by this court in *Carter v. Collins.* In this case, appellants do not claim under any of the parties to *Carter v. Collins.* Their claims are based upon earlier severances of the Escobeda mineral interests. But their claims urge the same conflict between Escobeda and Colville as that urged by the appellants in *Carter v. Collins.*

*Carter v. Collins* was an action in trespass to try title brought by the appellees of that case to recover most of the Thomas Colville League. *See W.T. Carter & Bro. v. Collins,* 192 S.W. at 317. Appellants in that earlier case disclaimed any interest in Colville except to whatever part of Colville was included within the boundaries of Escobeda. *Id.* The jury found that Colville and Escobeda do not conflict. *Id.* In 1916, this court identified the principal question as whether the Colville and Escobeda leagues were in conflict. *Id.* In our earlier opinion, the court concluded that the evidence sustained the jury finding of no conflict. In reaching its conclusion, the court discussed in detail the relevant evidence beginning with the original survey of Escobeda in 1835. *Id.* at 317–21.

While the quality of the surveying efforts described in *Carter v. Collins* was at times inept at best, nevertheless, we conclude, after a rather painstaking and detailed review of the various boundary descriptions, as well as the illustrated plat reproduced in the opinion, that sufficient evidence was contained in the record in the prior case to support the jury's finding that the two boundary descriptions of the Escobeda League and the Colville League do not conflict in that they were not superimposed, one survey on top of the other. *Carter v. Collins* was a trespass to try title

---

1. We have adopted the spelling of Wylle that is used on the plat in *Carter v. Collins,* 192 S.W. at 318.

case in which the appellants "disclaimed any interest in or title to the Thomas Colville league, save and except whatever part thereof might be included within the ... Bartolo Escobeda league of land...." *Id.* at 317. Appellants, in essence, were claiming ownership to property *only* to the extent it was reflected in the Escobeda League boundary survey. The issue was simply decided by having the jury compare the two surveys, review an illustrated plat admitted into evidence, and evaluate testimony from witnesses. *Id.* at 318.

With regard to the evidence reviewed by this Court in the earlier case, we observed that "[t]he great preponderance of the evidence in this case establishes the fact that the Thomas Colville league was actually located on the ground as shown in the above plat." *Id.* at 319. Having said that, we then went on to methodically set out the inaccuracy in the purported location of the Escobeda survey in relation to other correctly established surveys and in relation to the existence of natural objects found and identified on the ground. *Id.* at 319–321. This was done by applying the following legal maxim which provides for a qualitative classification and grade of calls in survey and field note interpretation:

> It is the law of this state that where natural objects, as called for in the field notes, can be actually found and identified on the ground as showing the footsteps of the surveyor, both course and distance, when inconsistent therewith, must give way and be disregarded.

*Id.* at 321.

After conducting this very detailed analysis of the Escobeda survey *vis-a-vis* well-established neighboring surveys and natural, identifiable objects, we concluded:

> It is to be seen that if the Escobeda league is located as contended for by the appellees, it places it out of conflict with the other leagues and surveys, all of which were made by the same surveyor, and within a very short period of each other, and acquits the surveyor of doing an irrational thing, that of surveying one

league upon another, when it was his official duty to locate the survey upon vacant domain, and without any intervening vacancies.

*Id.* Since the "other leagues and surveys" do indeed include the Thompson and Wylle leagues, as represented on the illustrated plat contained in the opinion, we find that *Carter v. Collins* establishes the accuracy of those surveys, as well as the fact that Escobeda is not in conflict with the other surveys. *Id.* at 321.

■ Our reading of *Carter v. Collins* in its entirety leads us to the conclusion that boundary lines were determined for a number of leagues, including the three at issue in the instant case. Therefore, *stare decisis* controls. The spirit of the so-called unorthodox view of *stare decisis* is certainly defeated if a decision must turn on whether exact metes and bounds appear in detail in the prior opinion. As noted above, over eighty-three years have passed since this Court handed down *Carter v. Collins*. The parties to that case, as well as any successors in interest, have had to live with the boundaries established therein. To step in at this point in time and essentially "wipe the slate clean" would, we believe, cause irreparable harm. The Texas Supreme Court has historically recognized the need for real property issues to remain settled once the appellate courts have spoken, *viz:*

> The distinction [legal distinction between "mortgages" and "assignments" in conveyances of real property] so recognized has become a long-established rule, under which many transactions have been entered into, which involve property of great value. Such being the case, we are not at liberty to overrule the former decisions of the court upon the question. It is far more important that a line of decisions under which valuable rights have accrued should be deemed settled than that the court should conform to what may be thought a more correct technical rule.

*Adams v. Bateman,* 88 Tex. 130, 30 S.W. 855 (1895). *See also Trapp v. Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424, 442 (1946) (opinion on reh'g) ("Since the Century[2] and Gulf–Atlantic[3] cases were decided so many years ago and many property rights have no doubt been acquired under them, we should not at this late day change them, even though doubt as to their correctness may exist in the minds of some lawyers and judges."). We, therefore, find no abuse of discretion by the trial court in granting appellees' motion for summary judgment based upon the doctrine of *stare decisis.* Issue one is overruled.

### VENUE

■ Appellants complain that the trial court erred in transferring this case from Harris County to Polk County. According to appellants, venue was proper in Harris County under TEX. CIV. PRAC. & REM.CODE ANN. § § 15.002(a)(2) and (3) and 15.005, because some of the appellees either resided in Harris County or had their principal offices there. Appellants concede that § 15.011 is mandatory, but contend this case is a suit for the recovery of personalty and its venue is not governed by § 15.011. We overrule appellants' complaint because their suit, as discussed under the *stare decisis* issue, is essentially one for the recovery of land. *See Renwar Oil Corp. v. Lancaster,* 154 Tex. 311, 276 S.W.2d 774, 776 (1955). Accordingly, mandatory venue of this suit was in Polk County.

For the reasons stated above, we affirm the grant of summary judgment by the trial court.

Affirmed.

---

**2.** *Railroad Comm'n v. Magnolia Petroleum Co.,* 130 Tex. 484, 109 S.W.2d 967 (1937), was generally known as the "Century" case. *See Trapp,* 198 S.W.2d at 439.

**3.** *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73 (1939).