MADERA PRODUCTION COMPANY,
Appellant,

v.

ATLANTIC RICHFIELD COMPANY,
et al., Appellees.

No. 06–01–00075–CV.

Court of Appeals of Texas,
Texarkana.

Submitted April 11, 2002.

Decided March 13, 2003.

Opinion Overruling May 30, 2003.

Michael A. Dover, Plano, William L. Wolf, William L. Wolf, PC, Dallas, for appellant.

David R. Watson, Harbour, Smith, Harris & Merritt, Longview, Jay A. Brandt, Novakov Davis & Munck, PC, David A. Miller, Miller & Lehman, Dallas, Andrew Harper Estes, Lynch Chappell & Alsup, Midland, for appellees.

Before ROSS, CORNELIUS * AND GRANT,** JJ.

## OPINION

Opinion by Justice GRANT (Retired).

Madera Production Company appeals the summary judgment granted in favor of Atlantic Richfield Company (ARCO), Wagner & Brown, Limited (W & B), C.W. Resources (CWR), Carl Westerman, Westerman Royalty Company (WRC), and Laura Jane Westerman as executrix for the estate of H.G. Westerman (the Estate) (collectively, Appellees).

Madera contends the trial court erred in transferring venue from Dallas County to Gregg County because venue was permissible in Dallas County and was not mandatory in Gregg County. Madera also contends the trial court erred in granting Appellees' Motions for Summary Judgment.

### The Agreement

On February 24, 1993, Madera acquired all of ARCO's rights, title, and interest in certain leasehold estates located in Upshur, Gregg, and Rusk Counties (the Madera Agreement). The conveyances included all of ARCO's rights to certain depths under the leases and the option to earn an interest in all lower depths (the Deep Rights).

The Madera Agreement outlined a procedure by which Madera could earn an interest in the Deep Rights. Madera had to first propose the drilling of a well to the Deep Rights. After receiving Madera's proposal, ARCO had to either farm out its interests in the Deep Rights or participate with Madera in drilling the well. If ARCO failed to respond within thirty days to Madera's proposal, it would be deemed to have farmed out its interests to Madera.

The Madera Agreement also contained a number of protections for Madera. If ARCO negotiated a farm out with another party to drill a well to the Deep Rights, ARCO was required to give Madera written notice and allow Madera to enter into a farm out under the same terms. If ARCO sought to drill wells, or to participate in the drilling of wells, to the Deep Rights, it was required to give Madera written notice and the right to elect to participate in the drilling. ARCO was required to obtain Madera's written consent before committing to any third party more acreage than sufficient to form a pooled unit under applicable field or statewide rules. Finally,

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

** Ben Z. Grant, Justice, Retired, Sitting by Assignment.

if ARCO sought to sell any or all of the rights to drill to the Deep Rights, Madera would have a preferential right of purchase.

The option under the Madera Agreement was to remain open until May 1, 1996. However, in February 1994, Madera sent a letter requesting the option period be tolled and stating that unless ARCO replied, it would assume ARCO agreed to the extension. ARCO did not reply.

### The Federal Action

In late 1996, Madera sued ARCO in Dallas County, but ARCO removed the suit to the federal district court for the Northern District of Texas (the federal action) based on the diversity of citizenship between it and Madera. In the federal action, Madera alleged it entered into a farm out agreement with ARCO for the Shiloh School Well in Gregg County. As part of that agreement, ARCO was obligated to assign Madera the Deep Rights for the Shiloh well. The parties exchanged various assignment proposals, but executed none of them.

Madera also alleged that in April 1996, it proposed a farm out of the Deep Rights on the Helen Pritchard Lease. ARCO responded that the proposal was untimely because it was received after the option period in the Madera Agreement had expired on May 1, 1996. ARCO therefore rejected Madera's proposal.

Madera contended the Madera Agreement was ambiguous. It also contended ARCO breached the Madera Agreement by failing to respond to its well proposal for the Pritchard Lease and by failing to provide an assignment for the Shiloh well. Madera further alleged causes of action for misrepresentation and conversion, and sought various equitable remedies including money had and received, the imposi-

tion of a constructive trust, and specific performance. It also contended the May 1, 1996, option period was extended by its February 1994 letter to ARCO.

In April 1997 and August 1997, ARCO filed Motions for Summary Judgment. The federal district court granted ARCO's motions with respect to all of Madera's claims except its breach of contract claims and its claim that the option period was extended. These matters were set for a jury trial in October 1998.

In late September 1998, Madera sought leave to file its Fourth Amended Complaint and leave to join W & B and CWR in the federal action. Madera alleged ARCO failed to produce documents in discovery disclosing an agreement between ARCO, W & B, and CWR (the W & B/CWR Agreement) that became effective February 1, 1996.

Madera alleged the W & B/CWR Agreement was a farm out of leases covered under the Madera Agreement. Madera contended that under the Madera Agreement, it was entitled to notice of this agreement and the right to enter into a farm out on the same leases. In addition, Madera alleged W & B and CWR caused a well to be drilled on the Tooke Lease, one of the leases governed by the Madera Agreement. Madera contended that under the Madera Agreement, it was entitled to participate in the drilling of this well. Finally, Madera alleged the W & B/CWR Agreement called for pooling acres greatly in excess of applicable rules. Madera contended that under the Madera Agreement, ARCO was required to obtain Madera's written consent before committing to any third party more acreage than sufficient to form a pooled unit in accordance with applicable field or statewide rules.

The federal district court overruled Madera's motion as untimely. Madera then

filed a second Motion for Leave to File Fourth Amended Complaint in which it no longer sought to add W & B and CWR as parties in the federal action, but only sought to add additional breach of contract claims against ARCO. The federal district court again overruled Madera's motion as untimely.

The case proceeded to a jury trial, where the jury found ARCO failed to allow Madera to obtain the Deep Rights on the Pritchard Lease, but also found Madera suffered zero damages. The jury also found the option period was extended from May 1, 1996 to July 1, 1997.

## The State Court Action

In July 1999, Madera sued Appellees in Dallas County. In its petition, Madera alleged substantially the same facts it alleged in seeking to amend its complaint in the federal action. The main difference between the allegations in Madera's petition in state court and its Motion for Leave to File its Fourth Amended Complaint in the federal action was that in the former, Madera alleged ARCO executed its agreement with W & B and CWR on August 29, 1996, while in the latter, it alleged the agreement was executed on February 26, 1996.

In its state court petition, Madera alleged causes of action against ARCO for breach of contract and civil conspiracy, and against W & B, CWR, and Westerman for tortious interference with contract, tortious interference with prospective business relations, civil conspiracy, trespass, and conversion. WRC and the Estate were named as possible beneficiaries of the other defendants' alleged wrongful conduct. Madera sought a declaratory judgment, imposition of a constructive trust, punitive damages, and its attorney's fees and costs.

CWR, W & B, Westerman, and WRC filed Motions to Transfer Venue from Dallas County to Gregg County. They contended venue was mandatory in Gregg County because Madera sought an interest in real property, recovery of damages to real property, and/or to quiet title to real property. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.011 (Vernon 2002). The trial court granted their motions.

ARCO filed a Plea in Bar to Madera's claims, an answer, and a Motion for Summary Judgment, in all of which ARCO contended Madera's claims were barred by res judicata. The trial court granted ARCO's Plea in Bar and its Motion for Summary Judgment.

CWR, W & B, Westerman, WRC, and the Estate each filed Motions for Summary Judgment alleging various grounds, including res judicata. The trial court granted their Motions for Summary Judgment on the basis of res judicata, specifically refusing to rule on the other grounds alleged in their motions.

## Venue

Madera first contends the trial court erred in granting CWR's, W & B's, Westerman's, and WRC's Motions to Transfer Venue. As a general rule, all suits must be brought (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, (2) in the county of the defendant's residence at the time the cause of action accrued if the defendant is a natural person, (3) in the county of the defendant's principal office if the defendant is not a natural person, or (4) in the county in which the plaintiff resided when the cause of action accrued. TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a) (Vernon 2002). However, venue is mandatory in the county in which all or a part of property is located in (1) actions for recovery of real property or an

estate or interest in real property, (2) actions for partition of real property, (3) actions to remove encumbrances from the title to real property, (4) actions for recovery of damages to real property, or (5) actions to quiet title to real property. TEX. CIV. PRAC. & REM.CODE ANN. § 15.011.

In a suit in which a plaintiff properly joins two or more claims or causes of action arising from the same transaction, occurrence, or series of transactions or occurrences, and one of the claims or causes of action is governed by a mandatory venue provision, the suit must be brought in the county required by the mandatory venue provision. TEX. CIV. PRAC. & REM.CODE ANN. § 15.004 (Vernon 2002). In a suit in which the plaintiff has established proper venue against a defendant, the trial court also has venue of all defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences. TEX. CIV. PRAC. & REM.CODE ANN. § 15.005 (Vernon 2002).

■ In Texas, the plaintiff has the first choice to establish venue in a proper county. *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex.1999). The plaintiff does this by filing the suit in the county of his or her choice. *Id.* If a defendant objects to the plaintiff's choice of venue through a motion to transfer venue, the plaintiff has the burden to present prima facie proof by affidavit that venue is maintainable in the county of suit. TEX.R. CIV. P. 87(3)(a); *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex.1999). If the plaintiff fails to establish proper venue, the trial court must transfer venue to the county specified in the defendant's motion to transfer, provided the defendant has requested transfer to another county of proper venue. *Masonite Corp.*, 997 S.W.2d at 197. On this issue, the defendant has the burden of proof. *Id.*

■ The standard of review of a trial court's venue ruling is governed by Texas Civil Practice and Remedies Code Section 15.064. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex.1993). Under that statute, error in transferring venue is not harmless and is reversible. TEX. CIV. PRAC. & REM. CODE ANN. § 15.064 (Vernon 2002). In determining whether venue was proper, an appellate court must consider the entire record. *Id.*

■ CWR, W & B, Westerman, and WRC sought a change of venue under the mandatory venue provision of Section 15.011. As such, they had the burden to prove venue was maintainable in Gregg County. *See* TEX.R. CIV. P. 87(2)(a). They sought to do so with reference to Madera's pleadings.

In its First Amended Original Petition, Madera requested the trial court "declare the rights, status, and other legal relations, *including issues of title and ownership to real property.*" (Emphasis added.) Madera also requested, among other things, a declaration that "Madera has the right to develop and own the deep right interests covered by the agreements" between W & B, CWR, and ARCO; that title to the property be quieted by removing the cloud caused by the agreements between W & B, CWR, and ARCO; that W & B, Westerman, and CWR's actions constituted conversion of "minerals and personal property belonging to Madera"; and that the trial court order an accounting and impose a constructive trust on "the funds, properties and interests attributable to the wells drilled pursuant" to the agreements between W & B, CWR, and ARCO.

In its Second Amended Original Petition, which it filed in response to CWR's, W & B's, Westerman's, and WRC's motions to transfer venue, Madera requested the trial court "declare the rights, status,

and other legal relations ... *excluding specifically any issues of title or ownership to real property.*" (Emphasis added.) Madera did not request the trial court to quiet title to the property as it did in its first amended petition. It also asserted that it owned "all revenues (after severance from the real property)" and that "a constructive trust exists with W & B, Westerman, and CWR as trustees holding revenues (after severance from the real property) and any other personal property retained for the benefit of Madera."

Appellees contend Madera's second amended petition is, in reality, an action for recovery of real property or an estate or interest in real property, or an action to quiet title to real property, couched in terms of a breach of contract claim to avoid Section 15.011's mandatory venue provision. Appellees contend the trial court could not find in favor of Madera's claim to ownership of all revenues from production and could not grant Madera an accounting and a constructive trust without first finding Madera had an interest in the Deep Rights.

Madera contends the ultimate or dominant purpose of the suit controls for venue purposes, and its breach of contract claim is the suit's ultimate purpose. However, Madera cites several cases written before the enactment of Section 15.004. As mentioned previously, Section 15.004 provides that in a suit alleging multiple claims, when one of the claims or causes of action is governed by a mandatory venue provision, the suit must be brought in the county required by the mandatory venue provision. TEX. CIV. PRAC. & REM.CODE ANN. § 15.004.

Therefore, the legal question the parties raise is whether Madera's repleading its case as an action for damages resulting from a breach of contract is sufficient to avoid Section 15.011's mandatory venue requirement. ARCO cites several cases it contends support its position that venue was mandatory in Gregg County.

On first blush, the venue statute related to land would appear to apply only to recovery of real property or damages to real property. However, the Texas cases have construed this mandatory provision more broadly than to actions ultimately seeking title or to clear title to real property.

■ Madera amended its pleading in an effort to exclude any issues of title or ownership to real property; however, the underlying issue that Madera must prove to show its entitlement to damages involves proof of ownership rights in a mineral lease, which in Texas is well established as real property. Whether the recovery is called to be one for conversion, breach of contract, or other nonreal property types of recovery, the true nature of the lawsuit depends on the facts alleged in the petition, the rights asserted, and the relief sought, not on the terms used to describe the cause of action. *Delese v. Albertson's, Inc.,* 83 S.W.3d 827 (Tex.App.-Texarkana 2002, no pet.).

The alleged facts in the present case indicate Madera is claiming that through an option, it owned the right to the mineral at a certain depth. In electing its remedy, Madera has chosen to seek monetary damages in lieu of endeavoring to enforce its mineral rights.

■ An action seeking royalty and overriding royalty in minerals is considered a suit on real property interests for the purpose of fixing venue in suits for recovery of such interests *or damages thereto. Parker v. Petro–Lewis Corp.,* 663 S.W.2d 905 (Tex.App.-San Antonio 1983, no writ). A suit seeking net profits interest based on ownership of land is also an

interest in land. *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 292 (Tex.App.-Austin 1983, writ ref'd n.r.e.). A suit over the ownership of proceeds from mineral interests must be filed in the county in which the real property is located even though the cause of action is for a declaratory judgment over monies. *Hill v. Enerlex, Inc.*, 969 S.W.2d 120 (Tex.App.-Eastland 1998). An option to purchase land creates an interest in land. *Hitchcock Props. v. Levering*, 776 S.W.2d 236, 238–39 (Tex.App.-Houston [1st Dist.] 1976);[1] *see generally* 1 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 272 (1950) (discussing how options to purchase land create an interest in land).

In *Renwar Oil Corp. v. Lancaster*, 154 Tex. 311, 276 S.W.2d 774, 775 (1955), the plaintiffs characterized their suit as an action in which they sought a declaratory judgment that they were entitled to 1/64th of the money realized from the sale of oil and gas under a particular oil and gas lease. The Texas Supreme Court held the suit was one for the recovery of land because the heart of the controversy was the actual royalty interest the plaintiffs possessed. *Id.* at 776.

In *Kilgore v. Black Stone Oil Co.*, 15 S.W.3d 666, 668 (Tex.App.-Beaumont 2000, pet. denied), *cert. denied*, 533 U.S. 930, 121 S.Ct. 2553, 150 L.Ed.2d 720 (2001), the appellants sued the appellees for conversion of oil and gas the appellants claimed they owned based on their claimed ownership of a certain mineral interest. The main issue in the case was the resolution of a boundary dispute, but the appellants also made a venue challenge. *Id.* at 667–70. The court of appeals held the appellants' suit was essentially one for recovery of land. *Id.* at 670.

In *Elder v. Miller*, 116 S.W.2d 1171, 1172 (Tex.Civ.App.-Waco 1938, no writ), the appellee claimed the appellant committed fraud in the conveyance of a mineral lease. The appellee sought the proceeds of the oil produced from the land. *Id.* at 1172. The court of appeals held the appellee's suit was one affecting title to land or the right of possession of land because the appellee could not show himself entitled to the proceeds of the oil from the land without showing he had an interest in the land. *See also Bracewell v. Fair*, 638 S.W.2d 612, 614–15 (Tex.App.-Houston [1st Dist.] 1982, no writ) (declaratory judgment action seeking declaration that appellees complied with the terms of the mineral lease was action for possession of the mineral lease); *Cont'l Oil Co. v. Anderson*, 405 S.W.2d 622, 626 (Tex.Civ.App.-Eastland 1966, writ dism'd) (plaintiff seeking an accounting and recovery for oil removed and to be removed from a mineral estate, in which he claimed to own an interest, is a suit for recovery of land, for damages thereto, and for waste).

Because Madera bases its claims to damages on the ownership right to a real property interest, transfer of this case to Gregg County where the mineral interest was located was proper. This point is overruled.

**Summary Judgment for ARCO**

Madera contends the trial court erred in granting summary judgment for ARCO based on res judicata. ARCO moved for

---

1. Although the Court in *Hitchcock* discussed a real estate option within the context of the Real Estate Licensing Act, it also stated that: "[g]iven the nature of an option's relation to and limitation over the land optioned, it is no less logically included in the definition of an 'interest' in land, than is, for example, an easement, or royalty interest, or a contingent future interest." *Hitchcock Props. v. Levering*, 776 S.W.2d 236, 238 (Tex.App.-Houston [1st Dist.] 1976).

summary judgment under TEX.R. CIV. P. 166a(b). To prevail on such a motion, the movant must establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). We indulge every reasonable inference and resolve any doubt in the nonmovant's favor. *Id.* On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.*

Until recently, Texas courts applied the federal law of res judicata when the first action occurred in federal district court and the later action occurred in state court. *See Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 718 (Tex.1990). In *Semtek International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), the United States Supreme Court held that it had "the last word on the claim-preclusive effect of *all* federal judgments" and that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." The Supreme Court held the claim-preclusive effect of a judgment of a federal court sitting in diversity is governed by the law of the state in which the federal diversity court sits. *Id.*

The federal action, which was based on the diversity of citizenship between ARCO and Madera, occurred in the Northern District of Texas. Therefore, we must apply the Texas law of res judicata to determine the claim preclusive effect of that judgment. *See generally Gulf Mach. Sales & Eng'g Corp. v. Heublein, Inc.*, 211 F.Supp.2d 1357, 1361 (M.D.Fla.2002); *Procter & Gamble Co. v. Haugen*, 158 F.Supp.2d 1286, 1296–97 (D.Utah 2001); *Smolensky v. McDaniel*, 144 F.Supp.2d 611, 614–15 (E.D.La.2001); *Marshall v. Inn of Madeline Island*, 631 N.W.2d 113, 118–19 (Minn.Ct.App.2001).

■■■■■■ In Texas, res judicata prevents the relitigation of a finally adjudicated claim and related matters that should have been litigated in a prior suit. *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex.2001). It requires proof of three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

■■■■■■ Texas applies a transactional approach to determining what claims are barred by res judicata. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 629 n. 4 (Tex.1992). Under that approach, a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose. *Id.* at 631. The determination is to be made pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage. *Id.*

Madera contends the August 29, 1996, agreement is the operative fact of its state court action and it could not have alleged this fact in the federal action. It cites *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997), *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.1997), *Securities Exchange Commission v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1464 (2d Cir.1996), and *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223, 227 (7th Cir.1993), which stand for the proposition that res judicata will not preclude a subsequent suit for a breach that had not occurred before the first suit was litigated.

Madera contends summary judgment was inappropriate based on res judicata because the W & B/CWR Agreement was not executed until August 29, 1996, which was outside the option period specified in the Madera Agreement, but within the judicially extended option period. Madera contends ARCO's actions did not constitute a breach until the federal district court's judgment extended the option period to July 1, 1997. Madera contends that, therefore, by definition, it could not have raised its claim in the federal action.

In the federal action, Madera alleged the W & B/CWR Agreement became effective February 1, 1996, within the option period of the Madera Agreement. It now contends that an oral agreement was reached before the May 1, 1996, expiration of the option period, but that the written agreement was not formalized until August 1996. The summary judgment proof contains a farm out agreement between ARCO, W & B, and CWR that was signed August 29, 1996, but made effective February 1, 1996. However, Madera could have brought its claim in the federal action, as is evidenced by its attempt to do so. Madera's cause of action in state court arises out of the same operative facts as it sought to advance in its Fourth Amended Complaint in the federal action. Though the summary judgment proof shows a written agreement between ARCO, W & B, and CWR was not executed until August 29, 1996, after the expiration of the May 1, 1996, contractual option period, the summary judgment proof also shows the agreement was made on February 1, 1996, within the contractual option period.

Even if it could be said that the W & B/CWR Agreement, as a contract for the sale of an interest in real property, had to be evidenced by a writing under the statute of frauds, *see* Tex. Bus. & Com.Code Ann. § 26.01(a), (b)(4) (Vernon 2002), it was not for that reason ineffective before the contract was signed in August 1996. *See Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487, 490 (1943) ("Statute of Frauds ... does not render void or illegal a promise or contract within its terms"); *Eland Energy, Inc. v. Rowden Oil & Gas, Inc.*, 914 S.W.2d 179, 186 (Tex.App.-San Antonio 1995, writ denied) (holding that failure to conform with the statute of frauds renders contract voidable, but not void); *Enochs v. Brown*, 872 S.W.2d 312, 318 (Tex.App.-Austin 1994, no writ) (same); *Joiner v. Elrod*, 716 S.W.2d 606, 608–09 (Tex.App.-Corpus Christi 1986, no writ) (same); *Scott v. Vandor*, 671 S.W.2d 79, 88 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.) (same); *Mason v. Abel*, 215 S.W.2d 377, 381 (Tex.Civ.App.-Dallas 1948, writ ref'd n.r.e.); *Bishop v. Williams*, 223 S.W. 512, 526 (Tex.Civ.App.-Austin 1920, writ ref'd) (op. on reh'g) (same). In any event, as a stranger to the W & B/CWR Agreement, Madera would not have standing to challenge the agreement on the statute of frauds ground. *See "Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 938 (Tex.1972); *Winkins v. Frank Winther Inv., Inc.*, 881

S.W.2d 557, 559 (Tex.App.-Houston [1st Dist.] 1994, no writ).

The further question is whether a claim Madera was prevented from bringing because of procedural considerations in one forum (e.g., federal district court) could be barred on the basis of res judicata in another forum (e.g., state district court). Federal cases, which apply res judicata similarly to the way Texas courts do, provide some insight.

In *Agrilectric Power Partners, Ltd. v. General Electric Co.*, 20 F.3d 663, 664 (5th Cir.1994), the appellants sought damages associated with the failure of a turbine they purchased from the appellee. The trial court granted the appellee's motion for summary judgment, and the appellants urged an alternative ground of liability on a motion for reconsideration. *Id.* The trial court rejected the claim as untimely. *Id.*

Two weeks later, the appellants filed a separate action seeking to advance the alternative ground of liability they urged in their motion for reconsideration. *Id.* The trial court granted the appellees' motion for summary judgment on the basis of res judicata. *Id.* The Fifth Circuit affirmed, holding the appellants' cause of action arose out of the same operative facts they advanced in their first action.

In *Nilsen v. City of Moss Point*, 701 F.2d 556, 558 (5th Cir.1983), the appellant sued various city officials, alleging they refused to hire her as a firefighter because of her sex. She sought to amend her pleadings to allege claims under 42 U.S.C. §§ 1983 and 1985(3), but the trial court denied her leave to amend. *Id.* at 559. Thereafter, the trial court granted summary judgment in favor of the defendants. *Id.* at 558. She later brought her Section 1983 and 1985(3) claims against the city, but the trial court granted summary judgment for the city based on res judicata. *Id.* at 559. The Fifth Circuit affirmed,

holding that her claims against the city arose from the same transaction as those against the city officials and that she could have brought those claims in her previous suit. *Id.* at 559–60.

In the present case, Madera sought, and was denied, leave to amend its pleadings in the federal action to allege the W & B/CWR Agreement as a breach of its contract with ARCO. That claim, if timely made, could have been brought in the federal action. Just as the appellants in *Agrilectric* and *Nilsen* were barred from bringing their claims in a subsequent action, Madera is barred by res judicata from bringing its claim in state court. Therefore, summary judgment was appropriate for ARCO on the basis of res judicata.

## Summary Judgment for the non-ARCO Appellees

■ Madera contends the summary judgment was inappropriate as to W & B, CWR, Westerman, WRC, and the Estate (the non-ARCO Appellees) based on res judicata. We have discussed earlier the requirements to establish the defense of res judicata. The issue relevant to the non-ARCO Appellees is whether there was privity between these Appellees and ARCO.

Madera contends it was unaware of the conveyance of the optioned property to the Appellees at the time it brought the federal action and thus was deprived of its right to litigate against those parties. However, Madera suggests in its Third Amended Complaint in the federal proceeding that "ARCO has entered into negotiations, agreements and/or understandings with undisclosed persons and/or entities for the development of the Deep Rights which Plaintiff is entitled to earn." At a later point in the federal proceedings, it sought to bring these parties into the action, but

the federal court refused at that point in the trial to allow the parties to be brought in. This court cannot review the federal court's action in excluding these parties at the later point in the trial. If the federal trial court's action was in error, then Madera could have appealed to the appropriate federal appellate court. No appeal was taken.

The federal action arose from the same subject matter, being the underlying agreement between Madera and ARCO. One of the ways a party can be in privity with another party is that they can be successors in interest. The claim against the non-ARCO Appellees was based on their claims as successors in interest in the deep mineral rights. In the case of *Amstadt v. United States Brass Corp.*, the Supreme Court, quoting *Kirby Lumber Corp. v. Southern Lumber Co.*, defined privity as "the mutual or successive relationship to the same rights of property." *Amstadt*, 919 S.W.2d at 653; *Kirby Lumber Corp. v. S. Lumber Co.*, 145 Tex. 151, 196 S.W.2d 387, 388 (1946) (quoting *Cain v. Balcom*, 130 Tex. 497, 109 S.W.2d 1044, 1046 (1937)). In the present case, although the causes of action are not identical, the right of ownership of the mineral interest involved is the identical subject matter.

We hold that the non-ARCO Appellees are in privity with ARCO so that the summary judgment was appropriate on that basis.

The judgment of the trial court is affirmed.

## OPINION ON MOTION FOR REHEARING

■ In its Motion for Rehearing, Madera Production Company contends the farmout agreement between Atlantic Richfield Company (ARCO) and both Wagner & Brown, Limited (W & B) and C.W.

Resources (CWR) was made on February 1, 1996, rather than August 29, 1996. Specifically, Madera asserts that if the farmout agreement's effective date was August 29, 1996, then res judicata does not apply. This, Madera insists, is because the breach litigated in the federal suit is based on an option period ending May 1, 1996, rather than the judicially-recognized option period ending July 1, 1997.

In its federal suit against ARCO, Madera asserted that its February 1994 letter to ARCO extended the option period ending May 1, 1996 to July 1, 1997. In its judgment, the federal court agreed. The court recognized the Madera ARCO option period ended on July 1, 1997. Therefore, whether the farmout agreement occurred in February 1996 or August 1996 is of no consequence. Both dates were within the extended option period recognized by the federal court.

To prevent being barred by res judicata, Madera had an obligation to bring all claims and parties in privity in the first suit as long as they arose out of the same subject matter. As stated above, a subsequent suit will be barred by res judicata if it arises out of the same subject matter of a previous suit and which, through the *exercise of diligence*, could have been litigated in a prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992). Factors to consider in determining whether facts constitute a single "transaction" are "their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (1980); *see Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex.1993). The claims and parties Madera now seeks to bring in state court derived from the same transaction as its federal claims. Specifically, both claims arose from the same option con-

tract; both concerned the same farmout agreement: the ARCO, W & B, and CWR agreement; both involved the same section of that agreement; and in both suits, Madera sought substantially the same relief against ARCO. What we must decide is whether Madera could have, with the exercise of diligence, brought its state claims against ARCO, W & B, and CWR in its federal action.

Madera's central contention is that res judicata cannot bar its present state claims against ARCO, W & B, and CWR because these claims did not accrue until judgment was rendered in the federal suit. That is, Madera had no actionable claim against ARCO and hence no need to raise it until the federal court created the judicially-extended option period. But, as stated above, the federal court did not create a new option period, but rather recognized the option period asserted by Madera. The August 29, 1996 alleged breach was always within the actual option period. During the federal litigation, as new parties and claims became known to Madera through the discovery process, it had an obligation to join them. From the record, it appears that is what Madera attempted to do. Madera, in its First and Second Motions for Leave to File an Amended Complaint, sought to add the same parties and claims in its federal suit that it now attempts to bring in state court. But the federal court denied the motions as untimely and without merit. In its Memorandum Opinion, the court pointed to Madera's failure to file a motion to compel discovery to obtain the necessary information to timely amend its complaint. Thus, from the record, it appears Madera's failure to exercise due diligence prevented it from adding the new claims and parties it now seeks to bring in state court. Allowing the parties and claims to be added now in state court would provide Madera an opportunity to circumvent the determination by the federal court.

We reject Madera's contention that the breaches complained about in the state action were unknown or could not have been known until it received the final judgment from the federal court and that its state claims are different than those litigated in the earlier federal action. Whether the farmout agreement constituted a breach in February 1996 or August 1996, both were within the option period asserted by Madera from its original complaint. Under either date, the claims were actionable in the federal suit. Madera's failure to alternatively plead the August 1996 date in the federal action or add new parties cannot now be remedied by an action in state court. Because Madera's state claims arose out of the same subject matter of the earlier federal suit and could have been raised there with the exercise of due diligence, Madera is barred by res judicata. Madera's Motion for Rehearing is overruled.