The **PROCTER & GAMBLE COMPANY and The Procter & Gamble Distributing Company, Plaintiffs,**

v.

**Randy L. HAUGEN et al., Defendants.**

**No. 1:95CV94K.**

United States District Court,
D. Utah,
Northern Division.

June 7, 2001.

Robert S. Campbell, Jr., Berman, Gaufin Tomsic & Savage, Salt Lake City, UT, Thomas S. Calder, John E. Jevicky, Robert Heuck, II, Robert Hueck, Frederick N. Hamilton, Kate Moriarty, Kimberly Ellen Eliot, Steven H. Ray, Frances L. Figetakis, Carl J. Stich, Mark C. Gaylo, Dinsmore & Shohl, Cincinnati, OH, Tracy Fowler,

Alan L. Sullivan, David N. Wolf, Snell & Wilmer, LLP, Salt Lake City, UT, William H. Christensen, Callister Nebeker & McCullough, Salt Lake City, UT, Sean N. Egan, Bendinger Crockett Peterson & Casey, Salt Lake City, UT, Stanley M. Chesley, Theresa L. Groh, Fay E. Stilz, Paul M. De Marco, Waite Schneider Bayless & Chesley LPA, Cincinnati, OH, Kari McCulloch, San Diego, CA, Gail L. Wurtzler, David Graham and Stubbs, Denver, CO, Neil Peck Snell & Wilmer, Denver, CO, Elizabeth King Burgess, Clawson Burgess, LLC, Salt Lake City, UT, for plaintiffs.

Julianne R. Balanch, Snow Christensen & Martineau, Salt Lake City, UT, Joseph J. Joyce, Kristin A. VanOrman, Strong & Hanni, Salt Lake City, UT, William J. Abraham, Rick J. Abraham, Columbus, OH, Scott Daniels, Salt Lake City, UT, for Randy L. Haugen, Freedom Tools, Inc., Freedom Associates, Inc., defendants.

Joseph J. Joyce, Kristin A. VanOrman, Strong & Hanni, Salt Lake City, UT, for Steven E. Brady, Stephen L. Bybee, Eagle Business Development, Inc., Ted Randal Walker, Walker Intern. Network, defendants.

Dale J. Llambert, Christensen & Jensen, Salt Lake City, UT, Edwin C. Barnes, Gainer M. Waldbillig, Clyde Snow Sessions & Swenson, Salt Lake City, UT, David B. Watkiss, Ballard, Spahr, Andrews & Ingersoll, Salt Lake City, UT, Sean M. Sullivan, Timothy Q. Delaney, James R. Sobieraj, Michael H. Baniak, Richard A. Kaplan, Dominic P. Zanfardino, Brinks Hofer Gilson & Lione, Chicago, IL, Michael A. Mohr, Albertus Hultink, Sharon D. Grider, Ada, MI, for Amway Corp., defendant.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on remand from the Tenth Circuit Court of Appeals on the issue of Amway's Status as a Party and on the Distributor Defendants' Motion for Summary Judgment. A hearing on these issues was held on March 20, 2001. At the hearing, Plaintiffs The Procter & Gamble Company and The Procter & Gamble Distributing Company (collectively, "P & G") were represented by Neil Peck, Carol Clawson, and Tracy H. Fowler. Defendant Amway Corporation ("Amway") was represented by James R. Sobieraj, and Defendants Randy L. Haugen, Freedom Tools, Inc., Ted Randall Walker, Walker International, Steven Brady, and Stephen Bybee (collectively the "Distributor Defendants") were represented by Joseph J. Joyce. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to these motions and has also considered the issues raised by the parties in the various letters sent to the court subsequent to the hearing. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

The factual background of this case is thoroughly set forth in *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262 (10th Cir. 2000) and will not be repeated here. The procedural background is as follows: In an Order dated September 4, 1998, this court dismissed P & G's Lanham Act claim, finding that the satanism rumor (also referred to as the "rumor" or the "subject message") did not contain false representations about the qualities or characteristics of P & G's products. Because of that ruling, it was unnecessary for this court to reach the issue of whether Defendants' dissemination of the rumor constituted commercial speech. P & G then filed a Motion for Reconsideration, arguing that

the rumor is actionable under the Lanham Act's "false advertising" prong as a misrepresentation concerning P & G's "commercial activities." In an Order dated November 19, 1998, this court denied P & G's motion because P & G had previously failed to make such an argument.

On appeal, the Tenth Circuit decided that, while the issue was not properly raised below, the Tenth Circuit would consider the issue because it involves a pure question of law, the " 'proper resolution' of which is certain." *Proctor & Gamble*, 222 F.3d at 1271. The Tenth Circuit noted that it would consider matters not raised in the trial court only in the most unusual circumstances, such as when the public interest is implicated or when manifest injustice would result. *Id.* The Tenth Circuit then found that the subject message "clearly related to P & G's 'commercial activities' under § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)".[1] Because that result implicates the public interest, given the importance of § 43 of the Lanham Act (" § 43") to the proper functioning of this country's competitive commercial markets, the Tenth Circuit elected to consider the issue on the merits. *Id.* at 1271.

After further analyzing the issue, the Tenth Circuit found that this court's grant of summary judgment was improvident because P & G had shown that a genuine issue of material fact exists as to whether the subject message is actionable under the "commercial activities" prong of § 43. *Id.* at 1273. The Tenth Circuit also analyzed whether the representations constitute "commercial advertising or pro-

motion" under § 43(a)(1)(B) and determined that it did. *Id.* at 1276. The Tenth Circuit then left "it to the district court to consider whether P & G has met those elements of a § 43(a) Lanham Act claim not before us in this appeal." *Id.* n. 10.

The Tenth Circuit also determined that P & G's tortious interference claim should have survived Defendants–Appellees' Rule 12(b)(6) motion and noted that the *res judicata* effect of the Texas court judgment could be addressed on remand. *Id.* at 1279 & n. 13.

Finally, the Tenth Circuit affirmed this court's grant of summary judgment on vicarious liability, holding that "Amway is not vicariously liable on the facts of this case for the acts of its distributor . . . ." *Id.* at 1278 n. 12 (relying on Utah law). It also affirmed this court's dismissal of P & G's unfair competition claim.

## II. DISCUSSION

### A. AMWAY'S STATUS AS A PARTY

#### 1. P & G's Arguments

P & G argues that Amway is still a party to this litigation because the Tenth Circuit reversed this court's "grant of summary judgment on P & G's Lanham Act claim and its dismissal of P & G's Utah tortious interference claim," both of which were pleaded directly against Amway as a party defendant. It argues that the Tenth Circuit, while fully capable of doing so, did not dismiss Amway as a party nor did it exclude Amway from the Lanham Act or tortious interference claims. Thus, P & G argues, it would be premature to dismiss

---

1. Section 43(a)(1)(B) provides in relevant part that:

    Any person who, on or in connection with any goods or services . . . uses in commerce . . . any . . . false or misleading representations of fact which . . . in commercial advertising or promotion misrepresents the nature, characteristics, [or] qualities . . . of . . . another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Amway prior to further discovery and a future summary judgment motion.

P & G also contends that the court should not be tempted to think that, because the Tenth Circuit affirmed this court's dismissal of P & G's claim for vicarious liability under Utah state law, Amway is no longer a party to this litigation. P & G contends that there is no merit to that argument for several reasons.

First, P & G claims, Amway never challenged P & G's Lanham Act claim on the ground that it could not be held vicariously liable for the acts of the Distributor Defendants. Instead, Amway contended that the satanism rumor "does not address the quality, ingredients or performance of any P & G products" and "does not make any false or misleading statements about P & G's or Amway's products."

Second, P & G argues that the Lanham Act claim had been dismissed from the case by the time this court considered Amway's Motion for Summary Judgment on P & G's Vicarious Liability and Negligent Supervision Claims. Thus, the court had no occasion to consider whether Amway could be held responsible for the acts of the Distributor Defendants under the Lanham Act's separate vicarious liability jurisprudence. P & G also relies on the Fifth Circuit's determination that the Tenth Circuit did not reach a conclusion regarding the issue of vicarious liability under the Lanham Act, and thus concluded that "neither *res judicata* nor collateral estoppel bars the Lanham Act claim," because the Tenth Circuit's determination on state law vicarious liability does not determine the outcome of a Lanham Act claim. *Procter & Gamble v. Amway Corp.*, 242 F.3d 539, 545–47 (5th Cir.2001).

Finally, P & G argues that, even if its claim for vicarious liability is no longer in the case, other direct and indirect theories of liability remain. For example, P & G contends, Amway can still be held directly liable for its own acts in connection with P & G's Lanham Act and tortious interference claims, including implied approval and facilitation of the satanic message and direct disparagement of P & G's products, as set forth in the Third Amended Complaint, which, it argues, is now the operative pleading in this case.

P & G also claims that Amway can also be contributorily liable under the Lanham Act because contributory liability has nothing to do with control; rather, it pertains only to Amway's knowledge. P & G contends that the Third Amended Complaint sufficiently alleges the theory of contributory liability to withstand what P & G has characterized as Amway's "premature motion to dismiss," and it argues that alternative theories of liability, not raised on appeal, are appropriately raised on remand.

### 2. Amway's Arguments

Amway contends that it is not properly a defendant in this case under any of P & G's four theories (*i.e.*, product disparagement, contributory infringement, and vicarious liability under the Lanham Act, and tortious interference).

### a. Product Disparagement and Contributory Infringement

Amway disagrees that P & G's direct theories of liability remain. Amway claims that this court has already rejected P & G's argument that P & G, from the outset of this case, sought to hold Amway directly liable for so-called product-disparaging statements and demonstrations.[2] More-

---

**2.** The court rejected that argument in its September 4, 1998 Order, finding that the only factual basis for P & G's Lanham Act claim— as reflected by the then-operative Second Amended Complaint—is distribution of the satanism rumor over the Amvox system by the

over, Amway argues, P & G did not appeal this court's ruling that the allegations of product disparagement were not a part of this case; rather P & G limited its appeal to the 1995 Amvox message (*i.e.,* the satanic rumor) forwarded by Randy Haugen. *See Proctor & Gamble,* 222 F.3d at 1269 n. 2. Therefore, Amway claims, P & G waived any product disparagement claims and its opportunity to hold Amway directly liable on these claims is now lost.

Also, Amway contends that P & G's new contributory infringement claim is not a basis for further Lanham Act proceedings because P & G never asserted contributory liability and because such a theory is not even viable under the Tenth Circuit mandate. Amway contends that P & G cannot belatedly interject new issues not originally raised in the district court.

Specifically, Amway claims that P & G has failed to point to anything demonstrating that it previously sought to hold Amway liable under such a theory. The best that P & G can do is point to an old P & G brief that states that "Amway very clearly understands that P & G seeks to hold it directly liable for the harm P & G suffered as set forth in Counts One through Five." Amway criticizes P & G for now contending that "directly liable" means "contributory infringement," particularly when one of the principal cases upon which P & G relies describes contributory liability as a form of "secondary liability." *See Hard Rock Café Licensing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143, 1148–49 (7th Cir.1992); *see also American Tel. & Tel.*

Co. ("AT & T") v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1432 (3d Cir. 1994) (discussing contributory liability under § 43(a) as a "theory of secondary liability").

Amway contends that direct liability under the Lanham Act is assessed against a person who makes false or misleading statements about his own or another person's goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B); *AT & T,* 42 F.3d at 1428. Because P & G has never alleged that Amway created or repeated the subject message, Amway asserts that it is not directly liable under the Lanham Act.

Further, Amway claims that this court must comply strictly with the Tenth Circuit's mandate, stating that, on remand, this court has " 'no power to reconsider issues laid to rest' on appeal," *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co.,* 962 F.2d 1528, 1534 (10th Cir.1992), and that this applies to everything decided "either expressly or by necessary implication." *Cherokee Nation v. Oklahoma,* 461 F.2d 674, 678 (10th Cir.1972). Amway points out that P & G's new theory of contributory liability is based on its allegation in the Third Amended Complaint that the Distributor–Defendants disseminated the subject message "with the implied approval of Amway." *See* P & G's Opening Brief on Amway's Status As a Party ("P & G's Opening Br.") at 8. However, the Tenth Circuit has already ruled that the distributors who spread the subject mes-

---

Distributor Defendants. The court noted that the first time the allegations about Amway misrepresenting the qualities and ingredients of P & G's products appeared were in the Third Amended Complaint. However, the Third Amended Complaint had been dismissed, and P & G was not granted leave to file its Proposed Fourth Amended Complaint.

Now, P & G contends that, because the Tenth Circuit reversed the dismissal of the

Third Amended Complaint, the Third Amended Complaint is now the operative pleading, and the product disparagement and false demonstration allegations in that Complaint are back in the case. P & G argues that the court should construe the Third Amended Complaint on its face and permit the product disparagement allegations to apply to P & G's Lanham Act claim.

sage did not have implied authority from Amway to do so. 222 F.3d at 1279. Amway contends that this ruling is binding, and it forecloses P & G as a matter of law from arguing a conflicting position on remand.

Furthermore, Amway argues, the Tenth Circuit decision likewise forecloses P & G from satisfying the requisite contributory liability test set forth in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). In *Inwood*, the Supreme Court stated that "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." *Id.* at 854, 102 S.Ct. 2182.

Amway points out that P & G does not—and cannot—contend that there is liability under the first prong of the test. Thus, the relevant issue here, Amway argues, is the second prong of the test— whether Amway knew or had reason to know that its distributors were engaging in trademark infringement. Amway contends that the Tenth Circuit's ruling likewise forecloses liability under the second prong of the *Inwood* test because the Tenth Circuit's findings that (1) Amway did not tell the distributors to spread the rumor, *see Proctor & Gamble,* 222 F.3d at 1278, and (2) upon learning of the subject message, Amway asked Haugen to issue a retraction (which he did), are inconsistent with the purposeful conduct required for contributory infringement. While P & G argues that Amway "could anticipate the continuing spread of the Satanic message," P & G's Opening Br. at 12, Amway emphasizes that the Supreme Court made clear that "could reasonably anticipate" is not the standard for contributory infringe-

ment. *See Inwood Labs.,* 456 U.S. at 854 n. 13, 102 S.Ct. 2182.

#### b. *Vicarious Liability*

Amway argues that P & G cannot escape the Tenth Circuit's affirmance of the summary dismissal of P & G's vicarious liability claim. The Tenth Circuit held that "Amway is not vicariously liable on the facts of this case for the acts of its distributors...." 222 F.3d at 1278 n. 12. The Tenth Circuit also found that "P & G cites no facts to show that Amway told the distributors to spread the message" and "[n]or did the distributors who spread the subject message act with implicit authority. Nothing in the record supports the conclusion that spreading the subject message, and indeed satanic rumors regarding P & G generally, was 'natural[ly] and ordinar[ily]' incident to Amway's business." *Id.* at 1278. Amway argues that this court cannot disregard that holding.

Amway also argues that P & G has never before argued that the standard for vicarious liability under the Lanham Act differs from that of Utah common law. Rather, it treated the standards as the same by equating vicarious liability law from Utah with federal Lanham Act law. Also, despite P & G's arguments to the contrary, Amway contends that the Tenth Circuit's holding encompasses P & G's assertion of vicarious liability for its Lanham Act claim because P & G's Third Amended Complaint reveals that P & G's vicarious liability count expressly incorporated all of the preceding counts, including, without distinction, the Lanham Act count. P & G treated its vicarious liability count in the same manner on appeal, and it cannot now argue that it only incorporated the state claims.

P & G now argues that the vicarious liability standards under the Lanham Act are "less stringent" than under Utah com-

mon law. Amway argues that, even if this were so, P & G did not make this argument on appeal, and its failure to do so constitutes a binding waiver. Moreover, Amway points out, P & G fails to explain how a separate Lanham Act vicarious liability standard, if one exists, differs from Utah law. In fact, Amway contends, P & G repeatedly argued to the Tenth Circuit that vicarious liability standards under the Lanham Act were *the same as* the common law of Utah. For example, in discussing vicarious liability in the Tenth Circuit, P & G relied on both the Utah case of *Glover v. Boy Scouts of America*, 923 P.2d 1383 (Utah 1996) and *AT & T*, 42 F.3d at 1432, a federal case involving the issue of vicarious liability under the Lanham Act. *See* P & G's Opening Br. at Ex. C, pp. 48, 55.

In addition, Amway argues, even if there were a meaningful difference between Utah common law and Lanham Act law, P & G has failed to explain how the application of the latter would result in Amway being vicariously liable in light of the Tenth Circuit's decision. The Tenth Circuit's analysis of P & G's vicarious liability claim followed the same analysis applied by the Third Circuit in *AT & T*. Also, according to Amway, the Tenth Circuit rejected every one of P & G's vicarious liability arguments that were based on the *AT & T* Lanham Act case. *Proctor & Gamble*, 222 F.3d at 1277–78.

### c. Tortious Interference

Amway contends that P & G's tortious interference claim is barred by *res judicata*, claiming that, while the Fifth Circuit subsequently reversed and remanded part of the Texas judgment, the *res judicata* effect of the trial court's dismissal of the tortious interference claim has not changed because P & G did not appeal the dismissal of that claim.[3] Amway argues that the fact that a case is remanded for further proceedings does not render *res judicata* inapplicable, citing *Laborer's International Union of North America v. Foster Wheeler Corp.*, 26 F.3d 375, 397 n. 23 (3d Cir.1994) ("If an appeal is taken from only part of the judgment, the remaining part is *res judicata*, and the vacation of the portion appealed from and remand of the case for further proceedings does not revive the trial court jurisdiction of the unappealed portion of the judgment.") and *Merrimack Street Garage, Inc. v. General Motors Corp.*, 667 F.Supp. 41, 44 (D.N.H.1987).

Moreover, Amway asserts, P & G's tortious interference claim is barred for the independent reason that, on appeal, P & G expressly limited its tortious interference claim to the subject message. The Tenth Circuit already decided that Amway is not vicariously liable for the Distributor Defendants' repetition of the subject message. A claim of direct liability against Amway under the tortious interference count was waived on appeal and would now exceed the Tenth Circuit mandate.

### 3. Analysis

#### a. Product Disparagement

The court agrees with Amway that there are no product disparagement allegations in this lawsuit pertaining to the Lanham Act claim. When Judge Winder dismissed P & G's tortious interference claim in the Second Amended Complaint, he granted leave to amend that claim within 15 days. P & G subsequently filed a Third Amended Complaint, amending not only its tortious interference claim, but also adding allegations of product disparagement. Amway again moved to dismiss the tor-

---

**3.** Amway also adopts the reasoning of the Distributor Defendant's Motion for Summary Judgment, discussed below, regarding why P & G's claim for tortious interference is barred by *res judicata*.

tious interference claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that it was still defective, and also moved to dismiss the product disparagement allegations because P & G did not have leave to add such allegations pertaining to the Lanham Act claim or any other claim.

In a July 14, 1997 Order, Judge Sam dismissed the tortious interference claim and also found that P & G's claims for violation of § 43 could proceed as outlined in the Second Amended Complaint—not the Third Amended Complaint—and that any further amendments must be sought through a motion to amend. P & G did not seek to amend its Second Amended Complaint at that time. Instead, it filed suit in Texas and included product disparagement allegations as part of its Lanham Act claim.

In its appeal to the Tenth Circuit, P & G did not appeal Judge Sam's ruling that P & G was required to obtain leave to amend before it could bring product disparagement allegations into its Complaint; rather, it appealed only Judge Sam's ruling on the tortious interference claim. Moreover, the Tenth Circuit's decision makes clear that, "because P & G limits its Lanham Act argument on appeal to the subject message, we likewise limit our analysis to that message." *See Proctor & Gamble,* 222 F.3d at 1269 n. 2.

Thus, the Second Amended Complaint is the operative pleading regarding the Lanham Act claim, and there are no product disparagement allegations in that Complaint. In any event, P & G waived any product disparagement claim under the Lanham Act by limiting its Lanham Act argument on appeal to only the subject message.[4] P & G, consequently, cannot assert a claim against Amway for product disparagement under the Lanham Act.

### b. Contributory Infringement

The court finds that P & G cannot hold Amway liable under a theory of contributory infringement because P & G has never before asserted contributory liability, and thus it has waived that claim. In addition, the court finds that such a theory is not viable under the Tenth Circuit mandate.

P & G's new theory of contributory liability is based on its allegation in the Third Amended Complaint that the Distributor–Defendants disseminated the subject message "with the implied approval of Amway." *See* P & G's Opening Br. at 8. However, the Tenth Circuit has already ruled that the distributors who spread the subject message did not have implied authority from Amway to do so. 222 F.3d at 1279. Thus, the Tenth Circuit's ruling necessarily precludes P & G from arguing to the contrary on remand.

Moreover, the Tenth Circuit decision likewise forecloses P & G from satisfying the requisite contributory liability test set forth in *Inwood Laboratories,* 456 U.S. at 854, 102 S.Ct. 2182. In that case, the Supreme Court stated that "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." *Id.*

In this case, there is no question that P & G cannot satisfy the first prong of *Inwood.* Thus, the question is whether P &

---

4. Also, because P & G did not appeal Judge Sam's ruling that leave to amend was required to add allegations pertaining to product disparagement, even if this court were to conclude that P & G's tortious interference claim was still viable (which it does not), P & G waived any argument that its tortious interference claim is based on allegations concerning product disparagement.

G has created a genuine issue of fact regarding whether Amway knew or had reason to know that its distributors were allegedly engaging in trademark infringement. The Tenth Circuit's ruling forecloses that possibility because the Tenth Circuit's findings that (1) Amway did not tell the distributors to spread the rumor, *see Proctor & Gamble*, 222 F.3d at 1278, and (2) upon learning of the subject message, Amway suggested that Haugen issue a retraction (which he did), *id.* at 1268, are inconsistent with the purposeful conduct required for contributory infringement. P & G's argument that Amway "could anticipate the continuing spread of the Satanic message," does not meet the standard for contributory infringement. *See Inwood Labs.*, 456 U.S. at 854 n. 13, 102 S.Ct. 2182.

### c.  *Vicarious Liability Under the Lanham Act*

P  & G's treatment of its vicarious liability claim(s) has been more than a little confusing. P & G pleaded vicarious liability as a separate theory, without regard to which cause of action it attached. Rather, P & G incorporated all the previously pleaded claims, including state law claims and a Lanham Act claim. During previous briefing in this court, and even on appeal, P & G argued its vicarious liability claim using both Utah state law and Lanham Act cases, blurring the distinction between the two—assuming one exists—and never mentioning that the standards might be different.

Now that the Tenth Circuit has affirmed this court's dismissal of P & G's vicarious liability claim under Utah law, P & G argues that it has always pursued a separate vicarious liability under the Lanham Act, which this court never had the opportunity to consider because the Lanham Act claim was dismissed before this court dismissed P & G's vicarious liability claim (which, at that time, presumably attached

to P & G's remaining state law tortious interference claim).

In contrast to P & G's insistence that its Lanham Act vicarious liability claim has never been addressed by a court, Amway argues that the Tenth Circuit necessarily ruled on such a claim due to P & G's strategy of incorporating both state law and Lanham Act claims into its vicarious liability cause of action and by relying on both state and federal law when addressing its vicarious liability claims in briefs and oral argument.

■ Without deciding whether there are any consequences associated with this muddled approach, the court finds that no vicarious liability claim exists against Amway in any event. Even if there is a difference between the state and Lanham Act vicarious liability standards (which P & G has wholly failed to explain), and assuming *arguendo* that the Lanham Act imposes a more liberal standard than Utah state law—as desired by P & G—the differences are not such that P & G could succeed on such a claim in light of the Tenth Circuit's ruling. The Tenth Circuit held that "Amway is not vicariously liable on the facts of this case for the acts of its distributors...." 222 F.3d at 1278 n. 12. The Tenth Circuit also found that "P & G cites no facts to show that Amway told the distributors to spread the message" and "[n]or did the distributors who spread the subject message act with implicit authority. Nothing in the record supports the conclusion that spreading the subject message, and indeed satanic rumors regarding P & G generally, was 'natural[ly] and ordinar[ily]' incident to Amway's business." *Id.* at 1278. Moreover, the Tenth Circuit followed essentially the same analysis applied by the Third Circuit in the *AT & T* Lanham Act case. *Compare Proctor & Gamble*, 222 F.3d at 1277–78 (finding that Defendant Distributors are more analogous to independent contractors than em-

ployees and also that P & G had failed to create a genuine issue of material fact as to whether Defendant Distributors were agents) *with AT & T v. Winback*, 42. F3d at 1434–40 (affirming district court's finding that sales representatives were independent contractors rather than employees but remanding for determination regarding whether they were agents). Thus, the Tenth Circuit's ruling necessarily forecloses a vicarious liability claim under the Lanham Act.

### d. Tortious Interference

For the reasons set forth below pertaining to the Distributor Defendants' Motion for Summary Judgment on P & G's tortious interference claim, this court finds that there is no tortious interference claim against Amway.

### B. THE DISTRIBUTOR DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[5]

In the Texas case, P & G had identified 148 statements that constituted its tortious interference claim. The Texas court ruled that many of these statements were barred by the one-year statute of limitations provided under Texas law. Consequently, the tortious interference claim was limited to disparaging statements that were purportedly made *after* the dissemination of the satanic rumor. The basis for the elimination of the remainder of the Texas tortious interference claim is somewhat unclear. According to Defendants, at trial, after the Distributor Defendants made a motion for judgment as a matter of law, P & G voluntarily dismissed the remainder of its tortious interference claim. P & G, on the other hand, appears to

argue that the Texas judge granted the motion for judgment as a matter of law based on *res judicata* due to this court's dismissal of the Third Amended Complaint, which has now been reversed. In any event, P & G did not appeal the dismissal of this claim to the Fifth Circuit. Thus, Defendants argue, the judgment is final, and the claim is barred by *res judicata.*

### 1. P & G's Arguments

P & G argues that the now-vacated Texas judgment cannot bar the tortious interference claim because a vacated judgment has no preclusive effect. Apparently, P & G contends that, because the Fifth Circuit reversed in part and remanded, the "final judgment" that had been entered previously is no longer operative, and orders adjudicating some but not all of the claims in an action are not final judgments on the merits.

Originally, P & G also argued that there can be no *res judicata* effect of the Texas judgment because there is a different statute of limitations in Utah, citing Tenth Circuit law providing that, if a claim is dismissed because of the statute of limitations in one jurisdiction, the claimant is not precluded from enforcing the claim in another jurisdiction if it is not time-barred there. *Northern Natural Gas Co. v. Grounds*, 931 F.2d 678, 682 (10th Cir. 1991). At oral argument, P & G recognized that *Northern Natural* had been overruled by *Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128–29 (10th Cir.), *cert. denied*, 502 U.S. 952, 112 S.Ct. 407, 116 L.Ed.2d 355 (1991).[6]

---

5. Initially, the Distributor Defendants moved for summary judgment on the remaining claims (Lanham Act and tortious interference) based on the *res judicata* effect of the Texas court. However, after they filed the instant motion, the Fifth Circuit reversed, in part, the Texas court's judgment. Thus, the Distribu-

tor Defendants agree that the Lanham Act claim is not out on *res judicata* grounds, and thus they have withdrawn that portion of their motion.

6. The court recognizes that there was no indication on the computer research databases

P & G then argued that *res judicata* does not apply because this case is not a "subsequent action," but rather, the first action filed. P & G also argued that the claim was not dismissed on statute of limitations grounds; rather, only part of the claim was dismissed on those grounds, so it is not the "same claim" for purposes of *res judicata*. Finally, it argued that a collateral estoppel—not *res judicata*—analysis is required, and a collateral estoppel analysis is "much tighter on the issue of same cause of action or issue identity." Transcript of the March 20, 2001 hearing at 20. P & G argues that the same claims are not at issue here because the Texas court went forward on only the allegations that fell within the one-year limitations period, while in this case, the claim encompasses a four-year period, as permitted by Utah's statute of limitations.

After the hearing, P & G notified the court that the United States Supreme Court had recently addressed the pivotal issue of the effect of a dismissal "on the merits" under FRCP 41(b), which, P & G contends, undermines the premise of the Tenth Circuit's decision in *Murphy*.[7] In *Semtek International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), the Supreme Court found that a judgment "on the merits" does not necessarily mean that it is entitled to claim-preclusive effect. *Id.* at 1025. The Court specifically held that a federal court's dismissal of a claim on statute of limitations grounds did not necessarily bar the subsequent assertion of that claim in another state. *Id.* at 1029.

## 2. Amway and the Distributor Defendants' Arguments

Defendants originally relied on *Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128–29 (10th Cir.), *cert. denied*, 502 U.S. 952, 112 S.Ct. 407, 116 L.Ed.2d 355 (1991), in which the Tenth Circuit, held that a claim dismissed under the statute of limitations in a federal court is a judgment on the merits that bars a subsequent action on the same claim, even when the claim would not be time-barred in the subsequent action. *Id.* at 1128–29; *see also Johnston v. Cigna Corp.*, 14 F.3d 486, 492 (10th Cir. 1993).

In addition, Defendants argue that there was a final judgment on the merits in the Texas court. Contrary to P & G's arguments, the fact that the Fifth Circuit remanded part of the case does not change the *res judicata* effect of the portions of that judgment that were not appealed, as discussed more fully above on page 11.

Finally, in response to P & G's letter to the court regarding the *Semtek* case, Defendants argue that *Semtek* supports their position that P & G's tortious interference claim is barred by *res judicata*.[8] While the *Semtek* Court found that not all judgments denominated "on the merits" are entitled to claim-preclusive effect, it explained when a court would apply *res judicata* to a dismissal on limitations grounds by a federal court sitting in diversity:

> Since state, rather than federal, substantive law is at issue there is no need for a uniform federal rule. And indeed, nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state

---

that *Northern Natural Gas* was no longer good law.

**7.** P & G's arguments are contained in a March 28, 2001 letter to the court from Carol Clawson.

**8.** The Distributor Defendants set forth their position in an April 11, 2001 letter to the court from Joseph Joyce. Amway also agreed to the arguments set forth in the letter.

rule) apply whether the dismissal has been ordered by a state or a federal court. This is, it seems to us, a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits.

*Semtek*, 121 S.Ct. at 1028. Defendants then argue that the rule of law applied by the Texas courts is that a dismissal under a statute of limitations is a judgment on the merits for purposes of *res judicata*, citing *Besing v. Vanden Eykel*, 878 S.W.2d 182, 183 (Tex.App.1994) and *Fite v. King*, 718 S.W.2d 345, 346 (Tex.App.1986). Therefore, they argue, under *Semtek* and Texas law, this court must accord *res judicata* effect to the Texas federal court's summary judgment on P & G's tortious interference claim.

### 3. Analysis

■ The court agrees with Amway and the Distributor Defendants that, under *Semtek* and the rule of law applied by the Texas courts, the Texas federal court's dismissal under a statute of limitations is a judgment on the merits, and P & G's tortious interference claim is therefore barred by *res judicata*.

■ *Res judicata*, or claim preclusion, applies when (1) both cases involve the same parties or their privies; (2) the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action; and (3) the first suit must have resulted in a final judgment on

the merits. *Macris & Assocs. v. Neways, Inc.*, 16 P.3d 1214, 1219 (Utah 2000); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996); *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir.1995). "Claim preclusion serves vital public interests, including (1) fostering reliance on prior adjudications; (2) preventing inconsistent decisions; (3) relieving parties of the cost and vexation of multiple lawsuits; and (4) conserving judicial resources." *See American Estate Management Corp. v. International Investment & Dev't Corp.*, 986 P.2d 765, 767 (Utah Ct.App.1999); *see also Besing*, 878 S.W.2d at 183–84.

In this case, it is clear that the rule of law applied by the Texas courts is that a dismissal under a statute of limitations is a judgment on the merits for purposes of *res judicata*. *Besing*, 878 S.W.2d at 183; *Fite*, 718 S.W.2d at 346. It is also clear that all of the elements of *res judicata* are satisfied.[9]

The court disagrees with P & G's argument that the tortious interference claim in the instant case is different than the time-barred portion of the tortious interference claim in the Texas litigation. The allegations in this case involve only the dissemination of the satanic rumor, which allegations were clearly found to be time-barred by the Texas court. Thus, because the allegations in the instant case are much narrower in scope than those in the Texas case, and the allegations in the Texas case that were not found to be time-barred are not part of the instant case, this court concludes that the "identical claim"

---

9. In addition, Amway is correct in arguing that the fact that a case is remanded for further proceedings does not render *res judicata* inapplicable to unappealed portions of the judgment. *See Laborer's Int'l Union of North Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 397 n. 24 (3d Cir.1994) ("If an appeal is taken from only part of the judgment, the remaining part is *res judicata*, and the vaca-

tion of the portion appealed from and remand of the case for further proceedings does not revive the trial court['s] jurisdiction of the unappealed portion of the judgment."); *Merrimack Street Garage*, 667 F.Supp. at 44; 18 Charles Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure*, § 4432 (1981).

requirement of *res judicata* is satisfied. While the converse would not hold true (*i.e.*, the doctrine of *res judicata* would not bar the claim if the allegations in the instant case were broader than those that were dismissed in the Texas case), that is not this case.

The court also disagrees with P & G's argument that, because this was the first case filed, a subsequent ruling from another court does not bind P & G. P & G has provided no authority for such a proposition, and such a rule would be inconsistent with the policy reasons underlying the doctrine of *res judicata.* The relevant question is not which case was *filed* first, but rather, which case proceeded to a final judgment first. P & G litigated its claims in another forum. A final judgment was entered in the Texas federal court first, and P & G must now accept the consequences of its decision to litigate the same claims in different courts.

In addition, the court finds that the tortious interference claim alleged against Amway is dismissed on the independent ground that, because this court was affirmed on the dismissal of its vicarious liability claim under Utah law, and because this court has now dismissed P & G's vicarious liability claim under the Lanham Act (to the extent one was ever pleaded), Amway cannot be liable for tortious interference.

### III. CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that

(1) Amway is dismissed from the case;

(2) Any pending discovery motions filed by Amway are MOOT;

(3) The Distributor Defendants' Motion for Partial Summary Judgment is GRANTED, and the tortious interference claim is dismissed with prejudice;

(4) P & G and the Distributor Defendants are directed to meet and confer about any remaining discovery to be conducted prior to trial on the remaining Lanham Act claim. The parties should attempt to agree upon a scheduling order and submit either a stipulated scheduling order or separate proposed scheduling orders no later than June 29, 2001. The parties should also notify the court whether there are any pending discovery motions before the court that require a decision; and

(5) Each party is to bear its own costs.