In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00075-CV


______________________________




MADERA PRODUCTION COMPANY, Appellant



V.



ATLANTIC RICHFIELD COMPANY, ET AL., Appellees




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 2000-975-A




 





Before Ross, Cornelius* and Grant,** JJ.

Opinion by Justice Grant



______________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

**Ben Z. Grant, Justice, Retired, Sitting by Assignment

O P I N I O N



 Madera Production Company appeals the summary judgment granted in favor of Atlantic
Richfield Company (ARCO), Wagner & Brown, Limited (W&B), C. W. Resources (CWR), Carl
Westerman, Westerman Royalty Company (WRC), and Laura Jane Westerman as executrix for the
estate of H. G. Westerman (the Estate) (collectively, Appellees).

 Madera contends the trial court erred in transferring venue from Dallas County to Gregg
County because venue was permissible in Dallas County and was not mandatory in Gregg County. 
Madera also contends the trial court erred in granting Appellees' Motions for Summary Judgment.

The Agreement

 On February 24, 1993, Madera acquired all of ARCO's rights, title, and interest in certain
leasehold estates located in Upshur, Gregg, and Rusk Counties (the Madera Agreement). The
conveyances included all of ARCO's rights to certain depths under the leases and the option to earn
an interest in all lower depths (the Deep Rights). 

 The Madera Agreement outlined a procedure by which Madera could earn an interest in the
Deep Rights. Madera had to first propose the drilling of a well to the Deep Rights. After receiving
Madera's proposal, ARCO had to either farm out its interests in the Deep Rights or participate with
Madera in drilling the well. If ARCO failed to respond within thirty days to Madera's proposal, it
would be deemed to have farmed out its interests to Madera. 

 The Madera Agreement also contained a number of protections for Madera. If ARCO
negotiated a farm out with another party to drill a well to the Deep Rights, ARCO was required to
give Madera written notice and allow Madera to enter into a farm out under the same terms. If
ARCO sought to drill wells, or to participate in the drilling of wells, to the Deep Rights, it was
required to give Madera written notice and the right to elect to participate in the drilling. ARCO was
required to obtain Madera's written consent before committing to any third party more acreage than
sufficient to form a pooled unit under applicable field or statewide rules. Finally, if ARCO sought
to sell any or all of the rights to drill to the Deep Rights, Madera would have a preferential right of
purchase. 

 The option under the Madera Agreement was to remain open until May 1, 1996. However,
in February 1994, Madera sent a letter requesting the option period be tolled and stating that unless
ARCO replied, it would assume ARCO agreed to the extension. ARCO did not reply. 

The Federal Action

 In late 1996, Madera sued ARCO in Dallas County, but ARCO removed the suit to the
federal district court for the Northern District of Texas (the federal action) based on the diversity of
citizenship between it and Madera. In the federal action, Madera alleged it entered into a farm out
agreement with ARCO for the Shiloh School Well in Gregg County. As part of that agreement,
ARCO was obligated to assign Madera the Deep Rights for the Shiloh well. The parties exchanged
various assignment proposals, but executed none of them. 

 Madera also alleged that in April 1996, it proposed a farm out of the Deep Rights on the
Helen Pritchard Lease. ARCO responded that the proposal was untimely because it was received
after the option period in the Madera Agreement had expired on May 1, 1996. ARCO therefore
rejected Madera's proposal.

 Madera contended the Madera Agreement was ambiguous. It also contended ARCO
breached the Madera Agreement by failing to respond to its well proposal for the Pritchard Lease
and by failing to provide an assignment for the Shiloh well. Madera further alleged causes of action
for misrepresentation and conversion, and sought various equitable remedies including money had
and received, the imposition of a constructive trust, and specific performance. It also contended the
May 1, 1996, option period was extended by its February 1994 letter to ARCO. 

 In April 1997 and August 1997, ARCO filed Motions for Summary Judgment. The federal
district court granted ARCO's motions with respect to all of Madera's claims except its breach of
contract claims and its claim that the option period was extended. These matters were set for a jury
trial in October 1998.

 In late September 1998, Madera sought leave to file its Fourth Amended Complaint and leave
to join W&B and CWR in the federal action. Madera alleged ARCO failed to produce documents
in discovery disclosing an agreement between ARCO, W&B, and CWR (the W&B/CWR
Agreement) that became effective February 1, 1996. 

 Madera alleged the W&B/CWR Agreement was a farm out of leases covered under the
Madera Agreement. Madera contended that under the Madera Agreement, it was entitled to notice
of this agreement and the right to enter into a farm out on the same leases. In addition, Madera
alleged W&B and CWR caused a well to be drilled on the Tooke Lease, one of the leases governed
by the Madera Agreement. Madera contended that under the Madera Agreement, it was entitled to
participate in the drilling of this well. Finally, Madera alleged the W&B/CWR Agreement called
for pooling acres greatly in excess of applicable rules. Madera contended that under the Madera
Agreement, ARCO was required to obtain Madera's written consent before committing to any third
party more acreage than sufficient to form a pooled unit in accordance with applicable field or
statewide rules.

 The federal district court overruled Madera's motion as untimely. Madera then filed a second
Motion for Leave to File Fourth Amended Complaint in which it no longer sought to add W&B and
CWR as parties in the federal action, but only sought to add additional breach of contract claims
against ARCO. The federal district court again overruled Madera's motion as untimely.

 The case proceeded to a jury trial, where the jury found ARCO failed to allow Madera to
obtain the Deep Rights on the Pritchard Lease, but also found Madera suffered zero damages. The
jury also found the option period was extended from May 1, 1996 to July 1, 1997. 

The State Court Action

 In July 1999, Madera sued Appellees in Dallas County. In its petition, Madera alleged
substantially the same facts it alleged in seeking to amend its complaint in the federal action. The
main difference between the allegations in Madera's petition in state court and its Motion for Leave
to File its Fourth Amended Complaint in the federal action was that in the former, Madera alleged
ARCO executed its agreement with W&B and CWR on August 29, 1996, while in the latter, it
alleged the agreement was executed on February 26, 1996. 

 In its state court petition, Madera alleged causes of action against ARCO for breach of
contract and civil conspiracy, and against W&B, CWR, and Westerman for tortious interference with
contract, tortious interference with prospective business relations, civil conspiracy, trespass, and
conversion. WRC and the Estate were named as possible beneficiaries of the other defendants'
alleged wrongful conduct. Madera sought a declaratory judgment, imposition of a constructive trust,
punitive damages, and its attorney's fees and costs. 

 CWR, W&B, Westerman, and WRC filed Motions to Transfer Venue from Dallas County
to Gregg County. They contended venue was mandatory in Gregg County because Madera sought
an interest in real property, recovery of damages to real property, and/or to quiet title to real property. 
See Tex. Civ. Prac. & Rem. Code Ann. § 15.011 (Vernon 2002). The trial court granted their
motions. 

 ARCO filed a Plea in Bar to Madera's claims, an answer, and a Motion for Summary
Judgment, in all of which ARCO contended Madera's claims were barred by res judicata. The trial
court granted ARCO's Plea in Bar and its Motion for Summary Judgment. 

 CWR, W&B, Westerman, WRC, and the Estate each filed Motions for Summary Judgment
alleging various grounds, including res judicata. The trial court granted their Motions for Summary
Judgment on the basis of res judicata, specifically refusing to rule on the other grounds alleged in
their motions. 

Venue

 Madera first contends the trial court erred in granting CWR's, W&B's, Westerman's, and
WRC's Motions to Transfer Venue. As a general rule, all suits must be brought (1) in the county in
which all or a substantial part of the events or omissions giving rise to the claim occurred, (2) in the
county of the defendant's residence at the time the cause of action accrued if the defendant is a
natural person, (3) in the county of the defendant's principal office if the defendant is not a natural
person, or (4) in the county in which the plaintiff resided when the cause of action accrued. Tex.
Civ. Prac. & Rem. Code Ann. § 15.002(a) (Vernon 2002). However, venue is mandatory in the
county in which all or a part of property is located in (1) actions for recovery of real property or an
estate or interest in real property, (2) actions for partition of real property, (3) actions to remove
encumbrances from the title to real property, (4) actions for recovery of damages to real property,
or (5) actions to quiet title to real property. Tex. Civ. Prac. & Rem. Code Ann. § 15.011.

 In a suit in which a plaintiff properly joins two or more claims or causes of action arising
from the same transaction, occurrence, or series of transactions or occurrences, and one of the claims
or causes of action is governed by a mandatory venue provision, the suit must be brought in the
county required by the mandatory venue provision. Tex. Civ. Prac. & Rem. Code Ann. § 15.004
(Vernon 2002). In a suit in which the plaintiff has established proper venue against a defendant, the
trial court also has venue of all defendants in all claims or actions arising out of the same transaction,
occurrence, or series of transactions or occurrences. Tex. Civ. Prac. & Rem. Code Ann. § 15.005
(Vernon 2002).

 In Texas, the plaintiff has the first choice to establish venue in a proper county. In re
Masonite Corp., 997 S.W.2d 194, 197 (Tex. 1999). The plaintiff does this by filing the suit in the
county of his or her choice. Id. If a defendant objects to the plaintiff's choice of venue through a
motion to transfer venue, the plaintiff has the burden to present prima facie proof by affidavit that
venue is maintainable in the county of suit. Tex. R. Civ. P. 87(3)(a); In re Mo. Pac. R.R. Co., 998
S.W.2d 212, 216 (Tex. 1999). If the plaintiff fails to establish proper venue, the trial court must
transfer venue to the county specified in the defendant's motion to transfer, provided the defendant
has requested transfer to another county of proper venue. Masonite Corp., 997 S.W.2d at 197. On
this issue, the defendant has the burden of proof. Id.

 The standard of review of a trial court's venue ruling is governed by Texas Civil Practice and
Remedies Code Section 15.064. Ruiz v. Conoco, Inc., 868 S.W.2d 752, 757 (Tex. 1993). Under that
statute, error in transferring venue is not harmless and is reversible. Tex. Civ. Prac. & Rem. Code
Ann. § 15.064 (Vernon 2002). In determining whether venue was proper, an appellate court must
consider the entire record. Id.

 CWR, W&B, Westerman, and WRC sought a change of venue under the mandatory venue
provision of Section 15.011. As such, they had the burden to prove venue was maintainable in
Gregg County. See Tex. R. Civ. P. 87(2)(a). They sought to do so with reference to Madera's
pleadings.

 In its First Amended Original Petition, Madera requested the trial court "declare the rights,
status, and other legal relations, including issues of title and ownership to real property." (Emphasis
added.) Madera also requested, among other things, a declaration that "Madera has the right to
develop and own the deep right interests covered by the agreements" between W&B, CWR, and
ARCO; that title to the property be quieted by removing the cloud caused by the agreements between
W&B, CWR, and ARCO; that W&B, Westerman, and CWR's actions constituted conversion of
"minerals and personal property belonging to Madera"; and that the trial court order an accounting
and impose a constructive trust on "the funds, properties and interests attributable to the wells drilled
pursuant" to the agreements between W&B, CWR, and ARCO. 

 In its Second Amended Original Petition, which it filed in response to CWR's, W&B's,
Westerman's, and WRC's motions to transfer venue, Madera requested the trial court "declare the
rights, status, and other legal relations . . . excluding specifically any issues of title or ownership to
real property." (Emphasis added.) Madera did not request the trial court to quiet title to the property
as it did in its first amended petition. It also asserted that it owned "all revenues (after severance
from the real property)" and that "a constructive trust exists with W&B, Westerman, and CWR as
trustees holding revenues (after severance from the real property) and any other personal property
retained for the benefit of Madera."

 Appellees contend Madera's second amended petition is, in reality, an action for recovery of
real property or an estate or interest in real property, or an action to quiet title to real property,
couched in terms of a breach of contract claim to avoid Section 15.011's mandatory venue provision. 
Appellees contend the trial court could not find in favor of Madera's claim to ownership of all
revenues from production and could not grant Madera an accounting and a constructive trust without
first finding Madera had an interest in the Deep Rights.

 Madera contends the ultimate or dominant purpose of the suit controls for venue purposes,
and its breach of contract claim is the suit's ultimate purpose. However, Madera cites several cases
written before the enactment of Section 15.004. As mentioned previously, Section 15.004 provides
that in a suit alleging multiple claims, when one of the claims or causes of action is governed by a
mandatory venue provision, the suit must be brought in the county required by the mandatory venue
provision. Tex. Civ. Prac. & Rem. Code Ann. § 15.004.

 Therefore, the legal question the parties raise is whether Madera's repleading its case as an
action for damages resulting from a breach of contract is sufficient to avoid Section 15.011's
mandatory venue requirement. ARCO cites several cases it contends support its position that venue
was mandatory in Gregg County.

 On first blush, the venue statute related to land would appear to apply only to recovery of real
property or damages to real property. However, the Texas cases have construed this mandatory
provision more broadly than to actions ultimately seeking title or to clear title to real property.

 Madera amended its pleading in an effort to exclude any issues of title or ownership to real
property; however, the underlying issue that Madera must prove to show its entitlement to damages
involves proof of ownership rights in a mineral lease, which in Texas is well established as real
property. Whether the recovery is called to be one for conversion, breach of contract, or other
nonreal property types of recovery, the true nature of the lawsuit depends on the facts alleged in the
petition, the rights asserted, and the relief sought, not on the terms used to describe the cause of
action. Delese v. Albertson's, Inc., 83 S.W.3d 827 (Tex. App.-Texarkana 2002, no pet.).

 The alleged facts in the present case indicate Madera is claiming that through an option, it
owned the right to the mineral at a certain depth. In electing its remedy, Madera has chosen to seek
monetary damages in lieu of endeavoring to enforce its mineral rights.

 An action seeking royalty and overriding royalty in minerals is considered a suit on real
property interests for the purpose of fixing venue in suits for recovery of such interests or damages
thereto. Parker v. Petro-Lewis Corp., 663 S.W.2d 905 (Tex. App.-San Antonio 1983, no writ). A
suit seeking net profits interest based on ownership of land is also an interest in land. T-Vestco Litt-Vada v. Lu-Cal One Oil Co., 651 S.W.2d 284, 292 (Tex. App.-Austin 1983, writ ref'd n.r.e.). A suit
over the ownership of proceeds from mineral interests must be filed in the county in which the real
property is located even though the cause of action is for a declaratory judgment over monies. Hill
v. Enerlex, Inc., 969 S.W.2d 120. An option to purchase land creates an interest in land. Hitchcock
Props. v. Levering, 776 S.W.2d 236, 238-39 (Tex. 1976); (1) see generally 1 Arthur Linton Corbin,
Corbin on Contracts § 272 (1950) (discussing how options to purchase land create an interest in
land).

 In Renwar Oil Corp. v. Lancaster, 154 Tex. 311, 276 S.W.2d 774, 775 (1955), the plaintiffs
characterized their suit as an action in which they sought a declaratory judgment that they were
entitled to 1/64th of the money realized from the sale of oil and gas under a particular oil and gas
lease. The Texas Supreme Court held the suit was one for the recovery of land because the heart of
the controversy was the actual royalty interest the plaintiffs possessed. Id. at 776.

 In Kilgore v. Black Stone Oil Co., 15 S.W.3d 666, 668 (Tex. App.-Beaumont 2000, pet.
denied), cert. denied, 533 U.S. 930 (2001), the appellants sued the appellees for conversion of oil
and gas the appellants claimed they owned based on their claimed ownership of a certain mineral
interest. The main issue in the case was the resolution of a boundary dispute, but the appellants also
made a venue challenge. Id. at 667-70. The court of appeals held the appellants' suit was essentially
one for recovery of land. Id. at 670.

 In Elder v. Miller, 116 S.W.2d 1171, 1172 (Tex. Civ. App.-Waco 1938, no writ), the
appellee claimed the appellant committed fraud in the conveyance of a mineral lease. The appellee
sought the proceeds of the oil produced from the land. Id. at 1172. The court of appeals held the
appellee's suit was one affecting title to land or the right of possession of land because the appellee
could not show himself entitled to the proceeds of the oil from the land without showing he had an
interest in the land. See also Bracewell v. Fair, 638 S.W.2d 612, 614-15 (Tex. App.-Houston [1st
Dist.] 1982, no writ) (declaratory judgment action seeking declaration that appellees complied with
the terms of the mineral lease was action for possession of the mineral lease); Cont'l Oil Co. v.
Anderson, 405 S.W.2d 622, 626 (Tex. Civ. App.-Eastland 1966, writ dism'd) (plaintiff seeking an
accounting and recovery for oil removed and to be removed from a mineral estate, in which he
claimed to own an interest, is a suit for recovery of land, for damages thereto, and for waste).

 Because Madera bases its claims to damages on the ownership right to a real property
interest, transfer of this case to Gregg County where the mineral interest was located was proper. 
This point is overruled.

Summary Judgment for ARCO

 Madera contends the trial court erred in granting summary judgment for ARCO based on res
judicata. ARCO moved for summary judgment under Tex. R. Civ. P. 166a(b). To prevail on such
a motion, the movant must establish that there is no genuine issue of material fact and that the
movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Summary judgment for
a defendant is proper when the defendant negates at least one element of each of the plaintiff's
theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. 
Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant. Rhone-Poulenc, Inc. v. Steel,
997 S.W.2d 217, 223 (Tex. 1999). We indulge every reasonable inference and resolve any doubt
in the nonmovant's favor. Id. On appeal, the movant still bears the burden of showing that there is
no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Id.

 Until recently, Texas courts applied the federal law of res judicata when the first action
occurred in federal district court and the later action occurred in state court. See Eagle Props., Ltd.
v. Scharbauer, 807 S.W.2d 714, 718 (Tex. 1990). In Semtek International, Inc. v. Lockheed Martin
Corp., 531 U.S. 497, 507-08 (2001), the United States Supreme Court held that it had "the last word
on the claim-preclusive effect of all federal judgments" and that "federal common law governs the
claim-preclusive effect of a dismissal by a federal court sitting in diversity." The Supreme Court
held the claim-preclusive effect of a judgment of a federal court sitting in diversity is governed by
the law of the state in which the federal diversity court sits. Id. 

 The federal action, which was based on the diversity of citizenship between ARCO and
Madera, occurred in the Northern District of Texas. Therefore, we must apply the Texas law of res
judicata to determine the claim preclusive effect of that judgment. See generally Gulf Mach. Sales
& Eng'g Corp. v. Heublein, Inc., 211 F. Supp. 2d 1357, 1361 (M.D. Fla. 2002); Proctor & Gamble
Co. v. Haugen, 158 F. Supp. 2d 1286, 1296-97 (D. Utah 2001); Smolensky v. McDaniel, 144 F.
Supp. 2d 611, 614-15 (E.D. La. 2001); Marshall v. Inn of Madeline Island, 631 N.W.2d 113, 118-19
(Minn. Ct. App. 2001).

 In Texas, res judicata prevents the relitigation of a finally adjudicated claim and related
matters that should have been litigated in a prior suit. State & County Mut. Fire Ins. Co. v. Miller,
52 S.W.3d 693, 696 (Tex. 2001). It requires proof of three elements: (1) a prior final judgment on
the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them;
and (3) a second action based on the same claims as were raised or could have been raised in the first
action. Amstadt v. United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996).

 Texas applies a transactional approach to determining what claims are barred by res judicata. 
Barr v. Resolution Trust Corp., 837 S.W.2d 627, 629 n.4 (Tex. 1992). Under that approach, a final
judgment on an action extinguishes the right to bring suit on the transaction, or series of connected
transactions, out of which the action arose. Id. at 631. The determination is to be made
pragmatically, giving weight to such considerations as whether the facts are related in time, space,
origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial
unit conforms to the parties' expectations or business understanding or usage. Id.

 Madera contends the August 29, 1996, agreement is the operative fact of its state court action
and it could not have alleged this fact in the federal action. It cites Maharaj v. BankAmerica Corp.,
128 F.3d 94, 97 (2d Cir. 1997), Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir.
1997), Securities Exchange Commission v. First Jersey Securites, Inc., 101 F.3d 1450, 1464 (2d Cir.
1996), and Herrmann v. Cencom Cable Associates, Inc., 999 F.2d 223, 227 (7th Cir. 1993), which
stand for the proposition that res judicata will not preclude a subsequent suit for a breach that had
not occurred before the first suit was litigated.

 Madera contends summary judgment was inappropriate based on res judicata because the
W&B/CWR Agreement was not executed until August 29, 1996, which was outside the option
period specified in the Madera Agreement, but within the judicially extended option period. Madera
contends ARCO's actions did not constitute a breach until the federal district court's judgment
extended the option period to July 1, 1997. Madera contends that, therefore, by definition, it could
not have raised its claim in the federal action.

 In the federal action, Madera alleged the W&B/CWR Agreement became effective
February 1, 1996, within the option period of the Madera Agreement. It now contends that an oral
agreement was reached before the May 1, 1996, expiration of the option period, but that the written
agreement was not formalized until August 1996. The summary judgment proof contains a farm out
agreement between ARCO, W&B, and CWR that was signed August 29, 1996, but made effective
February 1, 1996. However, Madera could have brought its claim in the federal action, as is
evidenced by its attempt to do so. Madera's cause of action in state court arises out of the same
operative facts as it sought to advance in its Fourth Amended Complaint in the federal action. 
Though the summary judgment proof shows a written agreement between ARCO, W&B, and CWR
was not executed until August 29, 1996, after the expiration of the May 1, 1996, contractual option
period, the summary judgment proof also shows the agreement was made on February 1, 1996,
within the contractual option period.

 Even if it could be said that the W&B/CWR Agreement, as a contract for the sale of an
interest in real property, had to be evidenced by a writing under the statute of frauds, see Tex. Bus.
& Com. Code Ann. § 26.01(a), (b)(4) (Vernon 2002), it was not for that reason ineffective before
the contract was signed in August 1996. See Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487,
490 (1943) ("Statute of Frauds . . . does not render void or illegal a promise or contract within its
terms"); Eland Energy, Inc. v. Rowden Oil & Gas, Inc., 914 S.W.2d 179, 186 (Tex. App.-San
Antonio 1995, writ denied) (holding that failure to conform with the statute of frauds renders
contract voidable, but not void); Enochs v. Brown, 872 S.W.2d 312, 318 (Tex. App.-Austin 1994,
no writ) (same); Joiner v. Elrod, 716 S.W.2d 606, 608-09 (Tex. App.-Corpus Christi 1986, no writ)
(same); Scott v. Vandor, 671 S.W.2d 79, 88 (Tex. App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.)
(same); Mason v. Abel, 215 S.W.2d 377, 381 (Tex. Civ. App.-Dallas 1948, writ ref'd n.r.e.); Bishop
v. Williams, 223 S.W. 512, 526 (Tex. Civ. App.-Austin 1920, writ ref'd) (op. on reh'g) (same). In
any event, as a stranger to the W&B/CWR Agreement, Madera would not have standing to challenge
the agreement on the statute of frauds ground. See "Moore" Burger, Inc. v. Phillips Petroleum Co.,
492 S.W.2d 934, 938 (Tex. 1972); Winkins v. Frank Winther Inv., Inc., 881 S.W.2d 557, 559 (Tex.
App.-Houston [1st Dist.] 1994, no writ).

 The further question is whether a claim Madera was prevented from bringing because of
procedural considerations in one forum (e.g., federal district court) could be barred on the basis of
res judicata in another forum (e.g., state district court). Federal cases, which apply res judicata
similarly to the way Texas courts do, provide some insight. 

 In Agrilectric Power Partners, Ltd. v. General Electric Co., 20 F.3d 663, 664 (5th Cir. 1994),
the appellants sought damages associated with the failure of a turbine they purchased from the
appellee. The trial court granted the appellee's motion for summary judgment, and the appellants
urged an alternative ground of liability on a motion for reconsideration. Id. The trial court rejected
the claim as untimely. Id.

 Two weeks later, the appellants filed a separate action seeking to advance the alternative
ground of liability they urged in their motion for reconsideration. Id. The trial court granted the
appellees' motion for summary judgment on the basis of res judicata. Id. The Fifth Circuit affirmed,
holding the appellants' cause of action arose out of the same operative facts they advanced in their
first action.

 In Nilsen v. City of Moss Point, 701 F.2d 556, 558 (5th Cir. 1983), the appellant sued various
city officials, alleging they refused to hire her as a firefighter because of her sex. She sought to
amend her pleadings to allege claims under 42 U.S.C. §§ 1983 and 1985(3), but the trial court denied
her leave to amend. Id. at 559. Thereafter, the trial court granted summary judgment in favor of the
defendants. Id. at 558. She later brought her Section 1983 and 1985(3) claims against the city, but
the trial court granted summary judgment for the city based on res judicata. Id. at 559. The Fifth
Circuit affirmed, holding that her claims against the city arose from the same transaction as those
against the city officials and that she could have brought those claims in her previous suit. Id. at
559-60.

 In the present case, Madera sought, and was denied, leave to amend its pleadings in the
federal action to allege the W&B/CWR Agreement as a breach of its contract with ARCO. That
claim, if timely made, could have been brought in the federal action. Just as the appellants in
Agrilectric and Nilsen were barred from bringing their claims in a subsequent action, Madera is
barred by res judicata from bringing its claim in state court. Therefore, summary judgment was
appropriate for ARCO on the basis of res judicata.

Summary Judgment for the non-ARCO Appellees

 Madera contends the summary judgment was inappropriate as to W&B, CWR, Westerman,
WRC, and the Estate (the non-ARCO Appellees) based on res judicata. We have discussed earlier
the requirements to establish the defense of res judicata. The issue relevant to the non-ARCO
Appellees is whether there was privity between these Appellees and ARCO.

 Madera contends it was unaware of the conveyance of the optioned property to the Appellees
at the time it brought the federal action and thus was deprived of its right to litigate against those
parties. However, Madera suggests in its Third Amended Complaint in the federal proceeding that
"ARCO has entered into negotiations, agreements and/or understandings with undisclosed persons
and/or entities for the development of the Deep Rights which Plaintiff is entitled to earn." At a later
point in the federal proceedings, it sought to bring these parties into the action, but the federal court
refused at that point in the trial to allow the parties to be brought in. This court cannot review the
federal court's action in excluding these parties at the later point in the trial. If the federal trial court's
action was in error, then Madera could have appealed to the appropriate federal appellate court. No
appeal was taken.

 The federal action arose from the same subject matter, being the underlying agreement
between Madera and ARCO. One of the ways a party can be in privity with another party is that they
can be successors in interest. The claim against the non-ARCO Appellees was based on their claims
as successors in interest in the deep mineral rights. In the case of Amstadt v. United States Brass
Corp., the Supreme Court, quoting Kirby Lumber Corp. v. Southern Lumber Co., defined privity as
"the mutual or successive relationship to the same rights of property." Amstadt, 919 S.W.2d at 653;
Kirby Lumber Corp. v. S. Lumber Co., 145 Tex. 151, 196 S.W.2d 387, 388 (1946) (quoting Cain v.
Balcom, 130 Tex. 497, 109 S.W.2d 1044, 1046 (1937). In the present case, although the causes of
action are not identical, the right of ownership of the mineral interest involved is the identical subject
matter.

 We hold that the non-ARCO Appellees are in privity with ARCO so that the summary
judgment was appropriate on that basis.

 The judgment of the trial court is affirmed. 




 Ben Z. Grant*

 Justice


*Justice, Retired, Sitting by Assignment


Date Submitted: April 11, 2002

Date Decided: March 13, 2003


1. Although the Court in Hitchcock discussed a real estate option within the context of the Real
Estate Licensing Act, it also stated that: "[g]iven the nature of an option's relation to and limitation
over the land optioned, it is no less logically included in the definition of an 'interest' in land, than
is, for example, an easement, or royalty interest, or a contingent future interest." Hitchcock Props.
v. Levering, 776 S.W.2d 236, 238 (Tex. 1976).